# WISCONSIN, MINNESOTA AND PACIFIC RAILROAD *v.* JACOBSON.

ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 28. Argued October 18, 19, 1900.—Decided December 10, 1900.

The briefs filed in this case are in plain violation of the amendment to Rule 31, adopted at the last term, and printed in a note to this case.

The providing, at the place of intersection of the two railroads affected by this case, ample facilities for transferring cars used in the regular business of the respective lines, and to provide facilities for conducting the business, while it would afford facilities to interstate commerce, would not regulate such commerce, within the meaning of the Constitution.

The tracks of the two railroads being connected, the making of joint rates

is a matter primarily for the companies interested, and the objection that there is any violation of the interstate commerce clause of the Constitution is untenable.

Whether a judgment enforcing trade connections between two railroad corporations is a violation of the constitutional rights of either or both depends upon the facts surrounding the cases in regard to which the judgment was given.

In this case the judgment given does not violate the constitutional rights of the plaintiff in error.

THIS case comes here by writ of error to the Supreme Court of Minnesota to review the judgment of that court, affirming the judgment of the District Court, directing the plaintiff in error and the Willmar and Sioux Falls Railway Company to make track connections with each other at Hanley Falls, in the State of Minnesota, where their respective tracks intersect.

The proceeding was duly commenced by the defendant in error, pursuant to the provisions of chapter 91 of the General Laws of Minnesota of 1895. The third section, a part of which is material to the question reviewed, is set forth in the margin.[1]

---

[1] SEC. 3. (a) That all common carriers subject to the provisions of this act shall provide at all points of connection, crossing or intersection at grade, where it is practicable and necessary for the interests of traffic, ample facilities by track connections for transferring any cars used in the regular business of their respective lines of road from their lines or tracks to those of any other common carrier whose lines or tracks may connect with, cross or intersect their own, and shall provide equal and reasonable facilities for the interchange of cars and traffic between their respective lines, and for the receiving, forwarding and delivery of passengers, property and cars to and from their several lines and those of other common carriers connecting therewith, and shall not discriminate in their rates or charges between such connecting lines or on freight coming over such lines; but this shall not be construed as requiring any common carrier to furnish for another common carrier its tracks, equipment or terminal facilities without reasonable compensation; that each of said connecting lines shall pay its proportionate share for the building and maintenance of such tracks and switches as may be necessary to furnish the transfer facilities required by this act, and in case they cannot agree on the amount which each line shall pay, then said amount shall, upon application by either party, be determined and adjusted by the Railroad and Warehouse Commission, and either party shall have the right to appeal from the order of said commission fixing the amount so to be paid, to the district court of the county where said transfer facilities are furnished, by serving a notice in writing on the adverse party within

In accordance with the statute, the defendant in error filed his petition before the railroad commission of the State, setting

---

ten (10) days after the making and filing of such order by said commission, and upon the service of such notice there shall be pending in said district court a civil action for the adjustment and determination of the amount to be paid by each carrier for the expense of the building and maintenance of said transfer facilities. Pleadings shall be made and filed in said action in conformity to those required by law and rules of practice in said court, and said cause shall be tried in the manner provided for the trial of civil actions in the district courts of this State.

(*b*) All railway companies doing business in this State shall, upon the demand of any person or persons interested, or upon demand of the Railroad and Warehouse Commission, establish reasonable joint through rates for the transportation of freight between points on their respective lines within this State.

Carload lots shall be transferred without unloading from the cars in which such shipments were first made, unless such unloading into other cars shall be done without charge therefor to the shipper or receiver of such carload lots, and such transfer shall be made without unreasonable delay, under such contract arrangements as such connecting companies may make, or under such rules as the Railroad and Warehouse Commission may prescribe, as hereafter provided in this act.

Less than carload lots shall be transferred into the connecting railway cars at cost, which shall be included in and made a part of the joint rates adopted by such railway companies, or established as provided by this act. When shipments of freight to be transported between different points within this State are required to be carried by two (2) or more railway companies operating connecting lines, such railway companies shall transport the same at reasonable through rates, and shall at all times give the same facilities and accommodations to local or state traffic as they give to interstate traffic over their line of road.

(c) In the event of that said railway companies fail to establish through joint rates, or fail to establish and charge reasonable rates for such through shipments, or fail to establish between themselves the rates and terms upon which cars of one company shall be transferred in such through shipments from the line of one company to the other and returned, or fail to provide for the convenience and prompt transfer of such through freight from the cars of the receiving company to those of the connecting line, it shall be the duty of the Railroad and Warehouse Commission of this State, and said commission is hereby directed, upon the application of any person or persons interested, to establish reasonable joint rates for the shipment of freight and cars over any two or more connecting lines of railroad in this State, and to prescribe the reasonable rules under which any such cars so transferred shall be returned; and in establishing, changing or revising any such rates they shall take into consideration the average of rates charged by

forth the grounds upon which he based the request for an order directing the two companies to make the track connection therein referred to.

Both companies defended.  The grounds of defence were sub-

said railway companies operating such connecting lines for joint shipments for like distances.

The rates established by said commission shall go into effect within ten (10) days after the same are promulgated by said commission, and from and after that time the schedule of rates so established shall be *prima facie* evidence in all courts of this State that such rates are reasonable through rates for the transportation of freight and cars upon the railroads for which such schedule has been fixed.

(*d*) Before the promulgation of such rates or rules, as above provided, the Railroad and Warehouse Commission shall notify the companies interested in the schedule of joint rates fixed by them, and they shall give said railroad companies a reasonable time thereafter to agree upon a division of charges provided for in such schedule, and in the event of the failure of the railway companies to agree upon such division and to notify the board of such agreement, said commission shall, after a hearing of the companies interested, decide the same, taking into consideration the value of terminal facilities and all the circumstances of the haul, and the division so determined by the commission shall, in all controversies or suits between the railroad companies interested, be *prima facie* evidence of the just and reasonable division of such charges.

(*e*) Every unjust and unreasonable charge for the transportation of freight and cars over two or more railroads in this State is hereby prohibited and declared to be unlawful, and every company or person violating the provisions of this section shall be subject to the penalties prescribed in section twelve (12) of the original act to which this act is amendatory.

(*f*) Nothing herein contained shall be construed as requiring any railroad company to send its cars over the line of railroad of another company when its own line of railroad runs to and reaches the point of destination or the point of connection with another railroad on which such point of destination is located, or to use its track or terminal facilities at terminal points for the handling of cars or traffic of another or competing company: *Provided*, That in no case shall the charges for transportation exceed the established through joint rates between any two points.

(*g*) Whenever any property is received by any common carrier, subject to the provisions of this act, to be transported from one place to another within this State, it shall be unlawful for such common carrier to limit in any way, except as stated in its classification schedule, hereinafter provided for, the common-law liability with reference to such property, while in its custody as a common carrier; such liability must include the absolute responsibility of the common carrier for the acts of its agents in relation to such property.

stantially alike. The plaintiff in error alleged in its answer, among other matters, that to construct a connecting track, as asked for in the petition and as provided for in the statute mentioned, would require the company to go outside of its right of way and to condemn land for that purpose.

In addition, it was urged that to compel the companies to made such connection would violate the commerce clause and also the Fourteenth Amendment of the Federal Constitution in particulars specially set forth, and it was claimed that the statute was therefore void.

Evidence was taken before the commission, which finally ordered the connection to be made. The two companies appealed to the district court, which heard the case anew, and then made substantially the same order as that made by the commission.

The judgment of the district court declared as follows:

" That it is the duty of the defendants, the Wisconsin, Minnesota and Pacific Railroad Company and the Willmar and Sioux Falls Railway Company, and they should be and are required to forthwith provide at the place of intersection of their said roads at said Hanley Falls, ample facilities by track connections for transferring any and all cars used in the regular business of their respective lines of road from the line or tracks of one of said companies to those of the other, and to forthwith provide, at said place of intersection, equal and reasonable facilities for the interchange of cars and traffic between their respective lines, and for the receiving, forwarding and delivering property and cars to and from their respective lines."

Payment of the cost of furnishing this track connection is provided for in section 3 (*a*) of the statute.

No evidence was offered on the part of the companies either before the commission or the district court. Reliance was placed on the evidence offered upon the part of the defendant in error and upon the admissions made in the district court.

The following are some of the facts appearing in the record herein:

The road of the plaintiff in error runs from Watertown, in the State of South Dakota, near the western boundary of the

State of Minnesota, easterly to Morton, in the latter State, where it connects with the Minneapolis and St. Louis Railroad Company, running from Morton to Minneapolis, and thereby constitutes physically one straight line of road from Watertown to Minneapolis. There is a small station called Hanley Falls, in the State of Minnesota, on the line of the plaintiff in error's road, a short distance east of Watertown. The plaintiff in error has a trackage contract, by virtue of which it connects at Merriam Junction, Minnesota, (a station within a few miles of Minneapolis,) with the Northwestern system, and in that way reaches Sioux Falls.

The Willmar and Sioux Falls Railway runs from Willmar, Minnesota, some distance south to Hanley Falls, and thence south to Sioux Falls in South Dakota. This road is operated by the Great Northern Railway Company.

It is 181 miles from Hanley Falls to Sioux City *via* the Willmar and Sioux Falls Railway and its connections, while it is 380 miles between the two places by way of the Wisconsin, Minnesota and Pacific Railroad and its connections, and it requires forty-six to forty-eight hours to transport freight over the latter road from Hanley Falls to Sioux City, while but fourteen hours are required to transport it between those places by the Willmar and Sioux Falls Railway. The tariff rates on stock from Hanley Falls to Sioux City are the same on both roads.

Traffic originating on the railroad of the plaintiff in error west of Hanley Falls and destined to Sioux City could, if transferred at Hanley Falls to the Willmar and Sioux Falls Railway, be transported to its destination by that road, which is 200 miles shorter than by the road of plaintiff in error, in from thirty to thirty-five hours' less time, provided the transfer from the road of the plaintiff in error to that of the Willmar and Sioux Falls road could be made at Hanley Falls in carloads without unloading from the cars in which the shipments were first made. No facilities have been provided by either of the companies for the transfer or interchange of business at Hanley Falls and there is no track connection between them, although they have track connections and transfer facilities at Minneapolis.

There is an immense supply of wood along the line of the Great Northern system of which the Willmar and Sioux Falls Railway forms a part, much larger than upon the line of the railroad of plaintiff in error, the wood on the line of the latter company being scarce and becoming more so every day. Citizens of towns west of Hanley Falls upon the line of the railroad of the plaintiff in error are purchasers and consumers of wood and posts, and a connection and transfer facilities at Hanley Falls would cheapen these commodities at such towns. Taking the wood from the Willmar road by transferring the cars might result in somewhat lessening the benefit to the plaintiff in error of a much longer haul of dearer wood along its own line.

The farmers along the line of the road of the plaintiff in error, west of Hanley Falls, have heretofore raised many stock cattle which are ready to be fed and fattened for market, the best market for such cattle being Sioux City, in the State of Iowa, "on account of the supply of feed being more plentiful and cheaper at or near Sioux City, and such stock can be sold to the best advantage in the market having the cheapest and best supply of feed." Making the connection at Hanley Falls would result in the use of the Willmar road from that point to Sioux Falls for certain kinds of cattle which otherwise would probably not be carried there and might be sent to the poorer market of St Paul or Minneapolis, and thus give the plaintiff in error the benefit of its long haul. The result of the continued lack of these facilities might also be that the trade in that kind of cattle would decline and be extinguished among the people west of Hanley Falls, in which event, while no one would be benefited by such want of facilities, many would be injured. At the station at Hanley Falls the tracks of these respective roads intersect at grade "at a point from 40 to 60 rods distant from the respective depots of the two companies, and in such manner that it is practicable for them to provide ample, equal and reasonable facilities by track connections for the transfer from one of said roads to that of the other of any and all cars of whatsoever name or nature used in the business or on the lines of the roads of the two companies mentioned, or either of them."

There was evidence showing that on account of the great loss in weight of the cattle known as "stockers and feeders" when arriving at Sioux City over the long haul of 380 miles on the road of the plaintiff in error and its connections, that market had become practically shut out from the owners of such cattle living on the road of the plaintiff in error west of Hanley Falls, while the St. Paul and Minneapolis markets, being poor markets for "stockers and feeders," the trade in that kind of cattle west of Hanley Falls had greatly diminished, and was still diminishing.

*Mr. Albert E. Clarke* for plaintiff in error.

*Mr. W. B. Douglas* for defendant in error.

MR. JUSTICE PECKHAM, after stating the foregoing facts, delivered the opinion of the court.

Before entering upon the discussion of the questions in this case, we desire to say that the briefs filed herein during this term are in plain violation of the amendment to Rule 31, adopted at the last term. See 178 U. S. 617. The rule as amended is reproduced in the margin.[1] The type used in quoting the statute is so small as to be exceedingly difficult to read. Many briefs are still printed on glazed paper. We shall hereafter insist upon a strict compliance with the terms of the rule as amended.

This writ of error has been sued out by the plaintiff in error alone, and various grounds are stated for the claim that the statute upon which the judgment below is founded is a violation of the Constitution of the United States. It is alleged that this judgment, and also the statute, interfere with and regulate interstate commerce, and therefore they violate the commerce clause of the Constitution.

---

[1] 31. All records, arguments and briefs, printed for the use of the court, must be in such form and size that they can be conveniently bound together, so as to make an ordinary octavo volume; and as well as all quotations contained therein, and the covers thereof, must be printed in clear type (never smaller than small pica) and on unglazed paper.

Plaintiff in error urges that transporting cattle from Minnesota to Iowa constitutes interstate commerce, and that neither the State of Minnesota nor its railroad commission has the right to in any manner interfere with or regulate such commerce. The judgment in this case, however, neither regulates nor interferes with that commerce, nor does that part of the statute upon which the judgment is founded. Whether any other portion of the statute does regulate such commerce is beside the question, and it is not necessary to here decide. To provide at the place of intersection of these two railroads, at Hanley Falls, ample facilities by track connections for transferring any and all cars used in the regular business of the respective lines of road from the lines or tracks of one of said companies to those of the other, and to provide at such place of intersection equal and reasonable facilities for the interchange of cars and traffic between their respective lines, and for the receiving, forwarding and delivering of property and cars to and from their respective lines, as provided for by this judgment, would plainly afford facilities to interstate commerce, if there were any, and would in nowise regulate such commerce within the meaning of the Constitution. That is all that has been done by the judgment under review. A State may furnish such facilities or direct them to be furnished by persons or corporations within its limits without violating the Federal Constitution. But the Supreme Court of the State, in the opinion delivered therein, said that there was ample evidence in the case of a necessity for such track connection resulting from the benefit which would accrue to exclusively state commerce when considered alone, to justify the ordering of the connection in question.

What is said in the statute in relation to the establishment of joint through rates for the transportation of freight between points on the respective lines of these roads within the State, and the manner of enforcing the establishment of such rates in case of the omission so to do by the companies, and as to any unjust or unreasonable charge for the transportation of freight or cars, are all matters which do not arise under this judgment, and which may never arise as a result of its enforcement. The

tracks being connected, the making of joint rates is a matter primarily for the companies interested, and it may be that they will agree upon them, and thus do away with the necessity of any resort to the courts. The objection that there is any violation of the interstate commerce clause of the Constitution is, we think, clearly untenable.

Adhering strictly to the question involved in this case, namely, the validity or the invalidity of the judgment actually rendered, we are met by the objection of the plaintiff in error that the judgment itself is necessarily and inherently illegal, because upon the conceded facts, if the judgment be enforced, it can only result in taking the property of the plaintiff in error without due process of law, and in refusing it the equal protection of the laws and in depriving it of its liberty to contract with such persons or corporations as it may choose. We think not one of these objections is tenable.

At common law the courts would be without power to make such an order as was made in this case by the state court. Legislative authority would be necessary in order to give power to the courts to render a judgment of this kind. If power were granted by the legislature, and it amounted in the particular case simply to a fair, reasonable and appropriate regulation of the business of the corporation, when considered with regard to the interests both of the company and of the public, the legislation would be valid, and would furnish, therefore, ample authority for the courts to enforce it. *Atchison &c. Railroad Company* v. *Denver &c. Railroad Company,* 110 U. S. 667, 681; *People ex rel. &c.* v. *Boston & Albany Railroad Company,* 70 N. Y. 569; *People* v. *Railroad Company,* 104 N. Y. 58.

Railroads have from the very outset been regarded as public highways, and the right and the duty of the government to regulate in a reasonable and proper manner the conduct and business of railroad corporations have been founded upon that fact. Constituting public highways of a most important character, the function of proper regulation by the government springs from the fact that in relation to all highways the duty of regulation is governmental in its nature. At the present day there is no denial of these propositions. *Olcott* v. *Supervisors,*

16 Wall. 678, 694; *Cherokee Nation* v. *Southern Kansas Railway Company*, 135 U. S. 641; *United States* v. *Joint Traffic Association*, 171 id. 505–569, 570; *Lake Shore Railway Company* v. *Ohio*, 173 id. 285, 301.

It is because they are such highways that the land upon which the rails are laid, and also that which may be necessary for the other purposes of the corporation, is said to be used for a public purpose, and on that ground the power of eminent domain which is given them is held to be a constitutional exercise of legislative authority. The right of the legislature to tax in furtherance of such use is founded upon the same considerations that the use is a public one, and therefore taxation in support of such use is valid. *Olcott* v. *Supervisors, supra.* The companies hold a public franchise, and governmental supervision is therefore valid. They are organized for the public interests and to subserve primarily the public good and convenience.

While this power of regulation exists, it is also to be remembered that the legislature cannot under the guise of regulation interfere with the proper conduct of the business of the railroad corporation in matters which do not fairly belong to the domain of reasonable regulation. *Lake Shore &c. Railway Company* v. *Smith*, 173 U. S. 684.

The only question arising as each case comes up for decision is whether in the particular case the power has been duly exercised. Instances where the exercise of this power has been discussed exist in the cases of *Louisville Railroad Company* v. *Kentucky*, 161 U. S. 677, 696; *Lake Shore Railway* v. *Ohio*, 173 U. S. 285, 292; *Holden* v. *Hardy*, 169 U. S. 376, 392. The books contain almost countless cases where the question of the police power of the States and its proper limitations and conditions have arisen, but those above cited are sufficient for the purposes of this case.

The argument favoring the invalidity set up by the plaintiff in error, so far as it is founded upon the provisions of the judgment in question, is directed to two alleged facts, the first of which is that by making track connections the plaintiff in error may be deprived of a long haul of a certain kind of cattle, and may be compelled to deliver them in a car to be drawn by the

Willmar road from Hanley Falls to Sioux City. This long haul exists, as stated, in transporting the cattle from Hanley Falls directly east for about one hundred miles to Merriam, near Minneapolis, then south for another hundred miles, and then westerly to Sioux Falls, 180 miles further, consuming in the transit forty-six to forty-eight hours, when, if the car were placed on the Willmar and Sioux Falls road at Hanley Falls, the transportation would cover but 180 miles, and the time consumed in transit would be but fourteen hours.

The other fact referred to relates to the wood transportation. There is now very little wood left along the line of the road of the plaintiff in error east of Hanley Falls, from which to supply consumers west of that station, and the price is dearer than the wood from northern Minnesota along the stations of the Willmar road. But the complaint is that the enforcement of this judgment would compel the plaintiff in error to receive wood from the Willmar road at Hanley Falls, which would thus permit the latter road to enter into competition at stations west of that place with the wood taken from along the line of the road of the plaintiff in error east of that station.

In truth, however, competition in the case of either cattle or wood lies more in assertion than in substantial fact.

First, as to the cattle. This long haul of 380 miles necessarily causes a great loss in weight in the cattle, and much greater liability arises of the lighter cattle being trampled upon and killed by the heavier ones in the same car. Such liability increases the longer the transportation exists. These facts act almost as a complete bar to the traffic in that kind of cattle called "stockers and feeders," from stations west of Hanley Falls over the road of the plaintiff in error to Sioux City. It may be said, therefore, that competition between the roads for the transportation of such cattle to Sioux Falls does not exist. Those who own these cattle and are near enough to Hanley Falls to drive them to that station and there load them upon the Willmar and Sioux Falls Railway do so, but those who are so far off as to make that impracticable have largely given up the attempt to reach Sioux Falls with their cattle on account of the difficulties and losses above mentioned. Nor does the failure

of the owners to reach the Sioux City market result in sending all the cattle of the "stockers and feeders" class, which would otherwise go to that market, to Minneapolis or St. Paul, which would give the long haul for those cattle to the road of the plaintiff in error. The evidence is that St. Paul and Minneapolis are much poorer markets for the above named cattle than Sioux City because of the absence of feed in those markets, which is present in large quantities and at cheaper prices at Sioux City. The result has therefore been that this lack of facilities at Hanley Falls has materially injured trade in this particular class of cattle by parties west of Hanley Falls, while the plaintiff in error does not secure any substantially greater amount of such transportation for the Minneapolis or St. Paul market, for the reason just stated.

Second, as to the wood. It seems that there is very little wood along and near the line of the road of the plaintiff in error east of Hanley Falls, and the supply is being rapidly exhausted, but that which yet remains is being brought in decreasing quantities and comes so dear to the inhabitants of towns west of Hanley Falls, that rather than purchase it they will and do drive from ten to fifteen miles to get to a station on the Willmar road, and there buy wood which they bring back for less than it costs to buy wood on the line of the road of the plaintiff in error coming from stations east of Hanley Falls. The country west of Hanley Falls is rolling prairie and produces no wood. The inhabitants of those towns are buying more wood, and yet are taking less from the road of the plaintiff in error. They obtain wood as stated by drawing it from stations on the Willmar road anywhere from ten to fifteen miles away. To furnish facilities therefore at Hanley Falls so that the wood from the forests of northern Minnesota may be brought there on the Willmar road and transferred in cars to the road of the plaintiff in error, and transported to stations west of Hanley Falls, is not in fact to compete or provide for competition with the plaintiff in error in the article of wood. It is simply affording facilities to people along the line of its road west of Hanley Falls to obtain wood by a short haul on the road of the plaintiff in error, which without such facilities would be obtained by many

people by drawing it in their own conveyances from stations on the Willmar road.

These are the facts upon which the plaintiff in error must rest its argument, that to enforce the judgment would compel it to pay its share in the cost of the construction of a track to be used for the purpose of depriving the company of its traffic, and transferring it to its competitor. The facts do not afford a fair foundation for the argument.

As has been seen, it is not a case, so far as the cattle are concerned, where the plaintiff in error is deprived of its traffic and compelled to transfer it to another and competing company. The question is whether this company in its effort to compel owners of this class of cattle to transport them over its road to Minneapolis, which is a less favorable market, can rightfully refuse to make track connections with another company, by which the owners of the cattle can reach the more favorable market of Sioux City at such a cost as will render the transportation profitable. In the consideration of this question the further fact must be borne in mind that the failure to get to Sioux City with such cattle does not necessarily result in sending them over the road of the plaintiff in error to either Minneapolis or St. Paul, but the lack of facilities at Hanley Falls simply tends to diminish, if not to extinguish, the trade in such cattle west of that station. Other kinds of cattle would still be sent to St. Paul or Minneapolis the same as ever. Can it be possible that a railroad chartered and built primarily for the accommodation and in the interests of the public can under such facts legally refuse the track connections directed in this case? Can it refuse to obey the commands of the legislature in such case upon the sole ground that it may thereby somewhat lessen the earnings of its road? Or can it refuse to make such connections because, if they were made, wood could be brought from the forests of northern Minnesota to all towns along its line west of Hanley Falls, and there sold for a less price than can now be done, when without such connection being made the demand for the wood along the line of the road of the plaintiff in error is nevertheless constantly decreasing owing to its quality and price? We think these questions should receive a

negative answer.    The interests of the public should not be thus·
wholly, and it seems to us, unjustifiably ignored.

Taking the facts which we have already enumerated into
consideration, we think there is·no justification furnished for
the argument that the judgment, if enforced, would violate any
of the constitutional ·rights of the plaintiff in error.    In so de-
ciding we do not at all mean to hold that under no circum-
stances could a judgment enforcing track connections between
two railroad corporations be a violation of the constitutional
rights of one or the other, or possibly of both such corpora-
tions.    It would depend upon the facts surrounding the cases in
regard to which the judgment was given.    The reasonableness
of the judgment with reference to the facts concerning each
case must be a material, if not a controlling, factor upon the
question of its validity.    A statute, or a regulation provided for
therein, is frequently valid, or the reverse according, as the fact
may be, whether it is a reasonable or an unreasonable exercise
of legislative power over the subject-matter involved.    And in
many cases questions of degree are the controlling ones by
which to determine the validity, or the reverse, of legislative ·
action.

We think this case is a reasonable exercise of the power of
regulation in favor of the interests and ·for the accommodation·
of the public, and that it does not, regard being had to the facts, ·
unduly, unfairly or improperly affect the pecuniary rights or
interests of the plaintiff in error.

As we have said, it is unnecessary in this case to determine .
the question of the validity of the whole act with regard to all
its provisions and details.    We need express no opinion upon
that subject.    We simply here determine that the judgment
actually rendered, directing this track connection to be made
and thus affording track facilities at Hanley Falls, does not vio-
late the constitutional rights of the plaintiff in error.

The distinction between this case and that of *Lake Shore &c.
Railway Co.* v. *Smith,* 173 U. S. (*supra*) is plain.    There we
held that the statute in question was not a reasonable regula-
tion of the business of the company ; that it was the exercise of
a pure, bald and unmixed power of discrimination in favor of a

few of the persons having occasion to travel on the road, permitting them to do so at a less expense than others, provided they could buy a certain number of tickets at one time. It was not legislation for the safety, health or proper convenience of the public, but an arbitrary enactment in favor of the persons spoken of, who, in the legislative judgment, should be carried at a less expense than the other members of the community, and there was no reasonable ground upon which the legislation could be rested, unless the simple decision of the legislature should be held to constitute such reason.

In this case the provision is a manifestly reasonable one, tending directly to the accommodation of the public, and in a manner not substantially or unreasonably detrimental to the ultimate interests of the corporation itself.

Although to carry out the judgment may require the exercise by the plaintiff in error of the power of eminent domain, and will also result in some, comparatively speaking, small expense, yet neither fact furnishes an answer to the application of defendant in error. *Mayor &c.* v. *Northwestern Railway*, 109 Mass. 112; *People* v. *Railroad*, 58 N. Y. 152, 163; *People* v. *Boston &c. Railroad Company*, 70 N. Y. 569; *People* v. *Railroad Company*, 104 N. Y. 58, 67.

The judgment of the Supreme Court of Minnesota is, therefore.

*Affirmed.*

MR. JUSTICE WHITE and MR. JUSTICE MCKENNA, dissented.