Mississippi Railroad Commission v. Yazoo & Miss. Valley Railroad Company.

[56 South. 668.]

1. Appeal and Error. *Advancement of causes. Hearing. Orders of railroad commission. Validity. Due process of law. Code* 1906, *section* 4907.

The state railroad commission is not entitled to have the hearing of its appeal advanced in the supreme court from a decree enjoining enforcement of an order against railroad companies, as such a case is not a preference case under the provisions of Code of 1906, section 4907, providing for the advancement of certain causes on appeal.

2. Railroads. *Regulation. Railroad commission. Orders. Validity.*

The state has the right to regulate railroads with in reasonable limits. For an order of a railroad commission, directing any railroad company to do a certain thing, to be reasonable, the thing ordered to be done must, among other things be within the purposes for which such railroad was chartered, or within the scope of the business in which it is engaged.

3. Due Process of Law. *Orders of railroad commission. Validity.*

An order of a railroad commission requiring the railroads to make physical connection at a point where it is not necessary in order that cars in transit may be transferred from one road to another, is unreasonable and unenforceable, as constituting a deprivation of property without due process of law, where its enforcement would merely result in the furnishing by each railroad to the other terminal facilities, the roads being engaged in transporting freight, and passengers, and not in switching or transfer service or furnishing terminal facilities to other roads.

Appeal from the chancery court of Hinds county.
Hon. G. G. Lyell, Chancellor.

Suit by the Yazoo & Mississippi Valley Railroad Company against the Mississippi Raliroad Commission. From a decree for plaintiffs, defendant appeals.

The Yazoo & Mississippi Valley Railroad Company sued out an injunction to restrain the enforcement of an order of the Railroad Commission requiring it and the Southern Railway Company to connect their tracks at Hollandale, a station situated on the line of both railways, where the two ran parallel. The chancellor granted a perpetual injunction, and the Railroad Commission appeals. At the March, 1911, term of the supreme court the appellant filed a motion to advance the cause on the docket as a preference case, which motion was overruled on May 22, 1911. Thereafter, at the October, 1911, term of said court, the case was argued and submitted.

*Watson & Jayne,* for appellant.

Based on the right of the public to use switch. We apprehend that this is one of, if not the determining question in this case, and will, therefore, go into the authorities on it to some extent.

It seems that the weight of authority and the best reasoned cases hold that the test as to whether the use to which the projected railroad, spur, feeder or connecting switch, is public or private, is determined by the question as to whether all of the public dealing with the public service corporation have the right to use the projected railroad, spur, feeder or connecting switch, and not by the fact that the number who have business requiring its use may be very small.

The cases defining when the use of public and private have most often arisen in the exercise of the right of eminent domain. However the principle involved in the determination of what is a public use apply in the case at bar. Some of the leading cases on this subject are here cited. *Ulmer* v. *Lime Rock Co.,* 57 Atl. (Me.) 1001; *Decamp* v. *Hibernia R. R. Co.,* 47 N. J. Law 43; *National Dock. R. R.* v. *Central R. R.,* 32 N. H. Eq. 755; *Kettle River R. R. Co.* v. *Eastern Ry. Co.,* 43 N. W.

(Minn.) 469; *Chicago V. & N. R.* v. *Carter,* 46 N. W. (Minn.) 75; *Phillips* v. *Watson,* 18 N. W. (Iowa) 659; *Chicago Dock & Sea Co.* v. *Garity,* 3 N. E. (Ill.) 448; *Gayland* v. *Chicago,* 68 N. E. (Ill.) 522.

. This question is fully discussed in the first case above cited and the authorities are there cited, classified and distinguished, and which case is so well reasoned that we content ourselves with the exposition of the question therein made.

2. Due process of law.—We do not believe the contention of appellee to the effect that the order of the railroad commission, directing the two railroads in question to put in the connecting switch over an intervening strip of land belonging to third persons, falls within the constitutional provision against the taking of property without due process of law. We fully understand that it would be necessary for one or the other of the railroads or both acting jointly to have condemned the right of way for the connecting switch under the right of eminent domain and pay therefor. This could have been done under their charters without question, and the owner of the strip of land would not have been heard to question their right on the ground that the exercise of eminent domain in the instant case amounted to the taking of his property without due process of law. Therefore, if these railroads or either of them, could exercise their right of eminent domain of their own volition, in case they deemed it to their interest to so do, why could not the state from whom they received their charters acting through the state railroad commission, compel them to exercise the right of eminent domain on behalf of the public? To put it otherwise we do not believe it comports with the better law on the subject under discussion to hold that the choice of the time and the necessity for the exercise of the right of eminent domain, belongs entirely to public service corporations. We believe that, upon public service corporations, failing to exercise the

right of eminent domain, given them under their charter, in cases where the public convenience demanded that such be done, then the state may, acting through its legislature, or through its railroad commission, or such other supervisory body as it may vest with the power, choose the time and pass upon the necessity for the exercise of the right of eminent domain and compel such exercise.

The following language of the Supreme Court of the United States, we think apply in point:

"In this case the provision is manifestly a reasonable one tending directly to the accommodation of the public and in a manner not substantial or unreasonably detrimental to the ultimate interest of the corporation itself."

"Although to carry out the judgment may require, by the plaintiff in error, of the power of eminent domain, and will also result in some, comparatively speaking, small expense, yet neither fact furnished an answer to the application of the defendant in error." *Railroad Co.* v. *Jacobson,* 179 U. S. 288, 45 L. Ed. 195. The case above cited was one requiring the track connection and facilities for the exchange of cars and traffic at railroad intersections. The opinion of the court in this case is supported by a list of authorities there cited.

Aside from the above authorities we believe that the question of due process of law was entirely removed from the case before the chancellor, by the tender of the right of way by the Arcola Manufacturing Co., as set out in the answer of appellant and the evidence in the case.

*Alexander & Alexander, Chalmers A. Alexander* and *James R. McDowell,* assistant attorney-general, for appellants.

We rely on the case of *Wisconsin, etc. R. R. Co.* v. *Jacobson,* 179 U. S. 287, 54 L. Ed. P. 194, for a reversal of the decree in the court below, rendered by chancellor

Lyell against the present appellants. The Wisconsin-Jacobson suit involves the question of railroad intersection and of validity of statute requiring track connection and interchange of traffic. The Law Edition, volume 45, shows the Minnesota statute, concerned, whose similarity to the Mississippi statute will at once be apparent. The suit started in the Minnesota state court, and came by writ of error before the United States Supreme Court. That court, in a lengthy opinion by Mr. Justice Peckham laid down the law, and we submit that the decision is here in point. The present court will note that the question of constitutional rights of the railroad companies was clearly presented to the United States Supreme Court, and that great tribunal held that the companies, by such Minnesota statute, were not deprived of their constitutional rights, of their property without the process of law. We accordingly submit that the decree of the chancery court below should be reversed and proper decree be rendered on the law and facts, in the present appellate court.

*Charles N. Burch* and *Mayes & Longstreet,* for appellee, filed a lengthy brief contending:

First: That the order of the Railroad Commission was void for the reason that it was made to subserve a private interest and not the public welfare, citing Lewis on Eminent Domain, sec. 157 and 171; Elliott on Railroads, sec. 961, page 1365, note; *Kyle* v. *T. & N. O. Ry.,* 4 L. R. A. 275; *St. Louis Railway* v. *Perry,* 20 L. R. A. 434; *G. & S. I. R. R.* v. *Railroad Commission,* 94 Miss. 134.

Second: The meaning of section 4895 of the Code authorizing the commission to require physical connections, is that such connections shall be required for carrying on the business for which the carrier is incorporated, to-wit, for transportation, and not for the purpose of carrying on a business for which carrier is not incorporated as switching or transfer service.

Third: That the effect of the order is to require the Yazoo & Mississippi Valley Railroad to surrender the use of its terminals to the Southern Railway. This is not only expressly forbidden by the Interstate Commerce Act, but violative of the Fourteenth Amendment of the Federal Constitution, citing *Atlantic Coast Line* v. *North Carolina*, 206 U. S. 1; *Wisconsin Railroad* v. *Jacobson*, 179 U. S. 287; *Lake Shore & M. S. Railroad* v. *Smith*, 173 U. S. 684.

Fourth: That the order of the Railroad Commission violates the Fourteenth Amendment of the Constitution of the United States, citing *Pacific Coast Lumber Manufacturing Association* v. *Northern Pacific Railroad*, 14 I. C. C. 57; *Central Stock Yards Company* v. *L. & N. R. R. Co.*, 192 U. S. 568.

Argued orally by *Jas. R. McDowell*, assistant attorney-general, and *Chalmers Alexander*, for appellant, and *Charles N. Burch*, for appellee.

MAYES, C. J., delivered the opinion of the court.

The motion of the attorney-general to advance the hearing of these cases on the docket of this court must be denied. The cases are not preference causes within the rule laid down in *Jackson Loan & Trust Co.* v. *State*, 96 Miss. 347, 54 South. 157, construing section 4907 of the Code of 1906. If oral argument is not desired by counsel on either side, the cases may be submitted at any time. The decision at this term will likely follow.

SMITH, J.

At Hollandale, Miss., and for some distance north and south thereof, the Yazoo & Mississippi Valley and Southern Railroads run near to and parallel with each other. An oil mill belonging to the Grenada Oil Mill Company is located at Hollandale, on the line of the Yazoo & Mississippi Valley Railroad. Desiring to have these rail-

roads physically connected, so that cars might be switched from the Southern Railroad to its oil mill, the Grenada Oil Mill Company requested an order from the State Railroad Commission, under the provisions of section 4895 of the Code, directing such connection to be made, which request was by the commission granted, and the following order passed: "This case came on this day to be heard on the petition of the Grenada Oil Mill to require said roads to connect their tracks at Hollandale, and due notice having been given all parties, and all parties being represented, after full hearing, it is ordered that said petition be granted, and that said roads be and are hereby required to connect their tracks, as prayed for; said roads to share proportionately the cost of said connection. The same to be done by September 1, 1908."

The physical connection of these roads at this point is not necessary in order that cars in transit may be transferred from one road to the other, for such connections between the roads exist at other places. If enforced, this order would serve two purposes only: First, that cars loaded by shippers at Hollandale on sidings located on one of these roads could be switched to the other for transportation to points of destination; and second, that cars brought to Hollandale by one road could be switched to the other and unloaded more conveniently by consignees. In other words, its enforcement would result simply in the furnishing by each road to the other of terminal facilities. After the making of this order, appellee, upon the filing of its bill in the court below, obtained an injunction temporarily enjoining the enforcement thereof, which injunction, upon final hearing, was made perpetual; hence this appeal.

The right of the state to regulate railroads within reasonable limits is not, and could not be successfully, challenged by appellee. Its complaint, among other things, is that the order in question is an unreasonable exercise

of this power, constituting, in fact, an attempt to deprive it of its property without due process of law. It may also be noted that the right of the state to enforce the use of union terminal facilities is not here involved. In *Wisconsin, etc., R. R. Co.* v. *Jacobson,* 179 U. S. 287, 21 Sup. Ct. 115, 45 L. Ed. 194, the Supreme Court of the United States, in deciding that an order of a state railroad commission, directing the making of a physical connection between two railroads necessary, in order that cars or freight in transit could be transferred from one road to the other, did not deprive either road of its property without due process of law, said: ''While this power of regulation exists, it is also to be remembered that the legislature cannot, under the guise of regulation, interfere with the proper conduct of the business of the railroad corporation in matters which do not fairly belong to the domain of reasonable regulation. . . . The only question arising as each case comes up for decision is whether in the particular case the power has been duly exercised. . . . Taking the facts which we have already enumerated into consideration, we think there is no justification furnished for the argument that the judgment, if enforced, would violate any of the constitutional rights of the plaintiff in error. In so deciding we do not at all mean to hold that under no circumstances could a judgment enforcing track connections between two railroad corporations be a violation of the constitutional rights of one or the other, or possibly of both, such corporations. It would depend upon the facts surrounding the cases in regard to which the judgment was given. The reasonableness of the judgment with reference to the facts concerning each case must be a material, if not a controlling, factor upon the question of its validity. A statute, or a regulation provided for therein, is frequently valid, or the reverse, according as the fact may be whether it is a reasonable or an unreasonable exercise of legislative power over the subject-matter involved.

And in many cases questions of degree are the controlling ones by which to determine the validity, or the reverse, of legislative action. We think this case is a reasonable exercise of the power of regulation in favor of the interests and for the accommodation of the public, and that it does not, regard being had to the facts, unduly, unfairly, or improperly affect the pecuniary rights or interests of the plaintiff in error.''

For an order of a railroad commission, directing any railroad company to do a certain thing, to be reasonable, the thing ordered to be done must, among other things, be within the purposes for which such railroad was chartered or within the scope of the business in which it is engaged. The business for which appellee was chartered, and in which it is engaged, is that of transporting freight and passengers from one point to another, and not that of doing switching or transfer service for, or furnishing terminal facilities to, other roads. This order, therefore, constitutes an unreasonable and arbitrary exercise of the power to regulate, and its enforcement would result in depriving appellee of its property without due process of law.                               *Affirmed*