## HOCKING VALLEY R. CO. v. NEW YORK COAL CO.

(Circuit Court of Appeals, Sixth Circuit. November 6, 1914.)

No. 2453.

1. LIMITATION OF ACTIONS (§ 35*)—PENAL STATUTES.

Rev. St. Ohio, § 3373-1, requiring railroad companies to extend to all, without discrimination, equal opportunities and facilities for receiving and shipping freight of the same class, and declaring that a railroad failing to do so shall be liable in a civil action to the party injured for the damages sustained, but that the recovery in any such action shall not be less than $500, is not a penal statute, within Gen. Code Ohio, § 11225, providing a limitation of one year for an action "on a statute for a penalty. or forfeiture"; the right of action being given only to the injured party, and being purely remedial, and this notwithstanding the minimum recovery provided.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 109, 158–167; Dec. Dig. § 35.*]

2. LIMITATION OF ACTIONS (§ 34*) — STATUTE APPLICABLE — STATUTORY LIABILITY.

If an action is on "a liability created by statute other than a forfeiture or penalty," for which Gen. Code Ohio, § 11222, provides a six-year limitation. it is controlled by such section, and not by section 11224, providing a four-year limitation for an action for "an injury to the rights of plaintiff not arising on contract."

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 151–157; Dec. Dig. § 34.*]

3. LIMITATION OF ACTIONS (§ 34*)—"LIABILITY CREATED BY STATUTE."

A "liability created by statute," within Gen. Code Ohio, § 11222, prescribing a limitation for an action on such a liability, is one which would not exist, but for the statute.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 151–157; Dec. Dig. § 34.*

For other definitions, see Words and Phrases, First and Second Series, Liability Created by Law.]

4. LIMITATION OF ACTIONS (§ 34*)—LIABILITY CREATED BY STATUTE—SWITCHING FACILITIES.

The duty of a railroad company to give shippers equality of switch track connections did not exist at common law; so that an action under Rev. St. Ohio, § 3373-1, for failure to do so where the railroad has given such facility to another shipper of freight of the same class, is one on a "liability created by statute," within Gen. Code Ohio, § 11222, prescribing a six-year limitation of action.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 151–157; Dec. Dig. § 34.*]

5. COURTS (§ 365*)—STATE AND FEDERAL COURTS—COMMON LAW.

A federal court is not bound by the decision of a state court as to what the common law is.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 950, 952, 955, 969–971; Dec. Dig. § 365.*

Conclusiveness of judgment between federal and state court, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468; Converse v. Stewart, 118 C. C. A. 215.]

6. APPEAL AND ERROR (§ 193*)—NONOBJECTION TO PLEADING—INDEFINITENESS.

Failure of the petition, in an action under Rev. St. Ohio, § 3373-1, for denial by defendant railroad company to plaintiff of a switch track con-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

nection, when it had given one to another shipper of freight of the same class, to specify such other, is mere matter of indefiniteness, for which the court, by provision of Gen. Code Ohio, § 11336, may require amendment, but of which defendant, failing to ask for such specification, may not complain.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1226–1238, 1240; Dec. Dig. § 193.*]

7. APPEAL AND ERROR (§ 1035*)—HARMLESS ERROR—THEORY OF TRIAL.

The petition and proof making a case under the first clause of Rev. St. Ohio, § 3373–1 (that is, that defendant railroad company denied plaintiff a switch track connection, when it had given one to another shipper of freight of the same class), it is immaterial that the case was tried as one under the second clause, which contains the additional element that defendant was interested in the freights of the other shipper, though this be not stated by the petition or shown by the evidence; the measure of damages not being different, and the trial court having substantially reduced the recovery, presumably to what it considered not unreasonable.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4031; Dec. Dig. § 1035.*]

8. COMMERCE (§ 13*)—REGULATION—STATE AND FEDERAL STATUTES.

The Interstate Commerce Act (Act Feb. 4, 1887, c. 104, § 3, 24 Stat. 380 [Comp. St. 1913, §, 8565]) having no application to intrastate commerce, state statutes regulating commerce are void only so far as they affect commerce of an interstate nature.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 7; Dec. Dig. § 13.*]

9. COMMERCE (§ 89*)—DISCRIMINATION BY CARRIER—SUBMITTING CLAIM TO INTERSTATE COMMERCE COMMISSION.

The petition, in an action under Rev. St. Ohio, § 3373–1, for denial by defendant railroad company of a switch track connection, when it had given one to another shipper of freight of the same class, not alleging that plaintiff had been denied the connection with respect to interstate freights, and the evidence not showing this, or even that plaintiff was engaged in interstate transportation, it was not necessary to maintenance of the action that plaintiff should have submitted his claim to the Interstate Commerce Commission.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 89.*]

In Error to the District Court of the United States for the Southern District of Ohio; John E. Sater, Judge.

Action by the New York Coal Company against the Hocking Valley Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Lawrence Maxwell, of Cincinnati, Ohio, for plaintiff in error.

Judson Harmon, of Cincinnati, Ohio, and L. G. Addison, of Columbus, Ohio, for defendant in error.

Before KNAPPEN and DENISON, Circuit Judges, and EVANS, District Judge.

KNAPPEN, Circuit Judge. The New York Coal Company sued the Hocking Valley Railroad Company to recover damages for the withholding from January 12, 1903, to November 29, 1904, of certain switching connections between plaintiff's mine and the Snow Fork branch of defendant's road, in Hocking county, Ohio. Defendant demurred on the ground that the action was barred by the statutes of lim-

itation, and that the petition stated no cause of action. The demurrer was overruled, defendant answered, its pleas of the statutes of limitation were demurred to, and demurrer sustained. On trial, plaintiff recovered verdict and judgment.

The questions involved, aside from rejection of the two defenses mentioned, will sufficiently appear in the course of this opinion. The petition rested defendant's alleged duty upon the "laws of the United States" as well as the Ohio statutes. The court below has throughout treated the action as based solely on section 3373–1 of the Revised Statutes of Ohio, which is printed in the margin.[1]

In support of its plea of limitation defendant invokes section 11225 of the General Code of Ohio, which provides a limitation of one year to an action "upon a statute for a penalty or forfeiture," as well as section 11224, which requires an action for "an injury to the rights of the plaintiff not arising on contract" to be brought within four years. The suit was brought January 9, 1909. If either of the two statutes mentioned applies, the action was barred. If, however, the action is upon "a liability created by statute other than a forfeiture or penalty," and so falls within section 11222, which allows six years for beginning suit, the action was begun in time.

[1] We think it clear that section 3373–1 is not a penal statute within the limitation laws of Ohio. It provides no penalty or forfeiture at the instance of, or for the benefit of the public. The right of action is given only to the injured person, and is purely remedial in nature. Huntington v. Attrill, 146 U. S. 657, 667, 668, 13 Sup. Ct. 224, 36 L. Ed. 1123; City of Atlanta v. Chattanooga Foundry & Pipe Works (C. C. A., 6th Cir.) 127 Fed. 23, 28, 29, 61 C. C. A. 387, 64 L. R. A. 721; Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U. S. 390, 397, 27 Sup. Ct. 65, 51 L. Ed. 241; affirming the case last cited. It is not rendered penal by the fact that it provides a minimum recovery of $500 "for any violation of this section," or, as expressed in Railway Co. v. Wren, 78 Ohio St. 137, 84 N. E. 785, "if discrimination be proved." Brady v. Daly, 175 U. S. 148, 20 Sup. Ct. 62, 44 L. Ed. 109, is directly in point. The statute there involved related to infringement of copyrights on dramatic compositions, and provided for the assessment of damages "at such sum, not less than one hundred dollars for the first, and fifty dollars for each subsequent performance, as to the

---

[1] "(3373–1.) Section 2. [Railroad companies must furnish equal facilities to shippers of same class; damages.] It shall be the duty of all railroad companies and of all persons operating a railroad, to secure and extend to all persons, companies and corporations, the same and equal opportunities and facilities for receiving and shipping freights of all kinds, of the same class (and the same and equal opportunities and facilities for receiving and shipping freights of all kinds of the same class), that such railroad company or the person operating such railroad, extends to, has used or enjoys, of and concerning freights owned by such railroad company, or the person operating such road or any of the officers or stockholders therein, or in which it, they or either of them have any interest and any railroad company or person operating any railroad failing to comply with or observe the provisions or requirements of this section, shall be liable in a civil action to the party injured for the damages sustained, but for any violation of this section the recovery in any such action shall not be less than five hundred dollars."

court shall appear to be just." The court said (175 U. S. 156, 20 Sup. Ct. 65, 44 L. Ed. 109):

"Where the statute provides in terms, as the one before us does, for a recovery of damages for an act which violates the. rights of the plaintiff, and gives the right of action solely to him, the fact that it also provides that such damages shall not be less than a certain sum, and may be more, if proved, does not, as we think, transform it into a penal statute."

The authority of the cases cited is in no way weakened by anything said in Parsons v. Chicago & Northwestern Ry. Co., 167 U. S. 447, 455, 17. Sup. Ct. 887, 42 L. Ed. 231, which was a case arising under the Interstate Commerce Act. Indeed, a statute may be penal as to one party and remedial as to another. Brady v. Daly, supra, 175 U. S. at page 155, 20 Sup. Ct. 62, 44 L. Ed. 109.

[2, 3] It is also clear that the four-year limitation (section 11224) does not apply, if the action is upon "a liability created by statute other than a forfeiture or penalty." Seymour v. Railway Co., 44 Ohio St. 12, 17, 18, 4 N. E. 236. Under section 11222 a liability created by statute is "a liability which would not exist but for the statute." Hawkins v. Furnace Co., 40 Ohio St. 507, 515.

[4, 5] The District Judge, in his opinion upon the demurrer to plaintiff's petition, followed the construction of section 3373–1 which he regarded as adopted in Railway Co. v. Wren, supra, viz., as imposing upon railroad companies a two-fold obligation, in requiring them to extend to all persons: First, the same and equal opportunities and facilities for receiving and shipping freight of all kinds *of the same class;* and, second, the same and equal opportunities and facilities for receiving and shipping freight of the same kind and of the same class *with respect to freights which it, or any of its officers or stockholders, own or are interested in.* We shall, for convenience, speak of these two requirements as the first and second clauses respectively.

Defendant denies that the statute was so construed in the Wren Case, and contends that the second clause adds nothing to the first, "except to emphasize the intent of the Legislature that opportunities and facilities concerning freights of which the company or any of its officers or stockholders are the owners, or in which they have an interest, are not to be excepted." The syllabus, which contains the authoritative decision of the court, states, that:

"1. It is the duty of a railroad company both under the common law, and by statute in this state—section 3373–1, Revised Statutes—to extend to all persons, without favoritism or discrimination equal opportunities and facilities for receiving and shipping freights of all kinds of the same class."

If the broad right of action mentioned in the syllabus, or contained in the first clause, was one created by statute, it is immaterial to the question of limitation which of the two constructions is followed, that adopted by the court below or that of defendant. Plaintiff's substantial grievance, as submitted to the jury, is that it was denied a switching connection from its mine to defendant's railroad, whereby coal in car load lots could be shipped from the mine to and upon defendant's main line of railroad, although such connection had been given to the Buckeye Coal & Railroad Company under similar conditions and with respect to the same class of freights. The question is whether the as-

serted obligation to furnish "the same and equal" switch track connections existed at the common law, or whether it is merely a creature of the statute invoked.

At the common law railroads were obligated to furnish equal opportunities and facilities for shipping freight to the extent, at least, of carrying for all who applied, in the order of application, and at reasonable rates; the weight of authority in this country being in favor of equality of charge to all for similar services (Interstate Commerce Commission v. B. & O. R. R. Co., 145 U. S. 263, 275, 12 Sup. Ct. 844, 36 L. Ed. 699); although it was said by Mr. Justice Brewer, in Parsons v. C. & N. W. R. R. Co., supra, 167 U. S. at page 455, 17 Sup. Ct. 887, 42 L. Ed. 231, that equality of charge was not required. See, to the same effect, Great Western Ry. Co. v. Sutton, 4 Eng. & Irish App. 226, 257. But the liability here in question is not merely to receive and ship freight. It is to make a switching connection whereby the railroad company would be required to operate an additional switch, with its attendant dangers and delays to its other traffic, and would be compelled either to run its own engines and cars over a piece of track which it had neither constructed nor accepted, or to permit the mine owner to operate cars onto and over the railroad company's tracks.

No authorities have been cited, and we have found none, directly asserting the common-law existence of this obligation. Railway Co. v. Larabee, 211 U. S. 612, 29 Sup. Ct. 214, 53 L. Ed. 352, cited by defendant, is readily distinguished in that no obligation to create a new connection was there involved, but only the hauling of traffic over existing tracks. The railroad company was merely compelled to give the Larabee Company the same services which it had previously given without objection. Nor does Railway Co. v. Wren, supra, in terms declare a common-law duty to give equality in switching connections. The court does say that the first clause of the statute is merely declaratory of the common law, but even that proposition was not involved in the case. Moreover, the specific obligation there in question related only to the furnishing of cars to shippers, and the question presented here was not mentioned.

Of course, this court is not bound by the decision of a state court as to what the common law is. The authorities, so far as they have come to our attention, are, at least inferentially or by analogy, opposed to the common-law existence of this obligation. Thus, in United States v. D., L. & W. R. R. Co. (C. C.) 40 Fed. 101, Judge Wallace, in a case at circuit involving the obligation of a railroad company under the Interstate Commerce Act to transport cattle in cars of a special construction belonging to a transportation company, held that it was "no part of the common-law obligation of railway companies to furnish the same facilities or instrumentalities of transportation to all alike." In Wisconsin, etc., R. R. Co. v. Jacobson, 179 U. S. 287, 296, 21 Sup. Ct. 115, 45 L. Ed. 194, Mr. Justice Peckham said that at common law the courts would be without power to make the order which was made in that case, which required two railroads to provide at an intersecting point facilities, by track connections, for transferring cars between the tracks of the respective companies, with equal facilities for interchange of

cars and traffic between, and the receiving, forwarding, and delivering of cars and property to and from, the respective lines. See, also, statement of Mr. Justice Brown in Interstate Commerce Commission v. B. & O. Ry. Co., supra, 145 U. S. at page 275, 12 Sup. Ct. at page 847, 36 L. Ed. 699, that the common law demanded of carriers "little more than that they should carry for all persons who applied, in the order in which the goods were delivered at the particular station, and that their charges for transportation should be reasonable." In Atchison, T. & S. F. R. Co. v. D. & N. O. R. Co., 110 U. S. 667, 674, 4 Sup. Ct. 185, 28 L. Ed. 291, it was said that a constitutional provision forbidding railroads to make *undue or unreasonable* discriminations in charges or facilities for transporting freight or passengers, or to give any preference in furnishing cars or motive power, imposed obligations no greater than at common law. But it could not have been meant to assert the existence at common law of a right to compel *equality* in switching connections; for, although it is also said in the case just cited that the railroad company was prohibited both by the common law and the Constitution of Colorado from *discriminating unreasonably* in favor of or against other railroad companies seeking to do business on its road, it was held that the constitutional provision giving every railroad company the right to connect with any other road, did not, without statutory aid, give the right to a business connection; Chief Justice Waite saying (100 U. S. 682, 4 Sup. Ct. 192, 28 L. Ed. 291), that the common law and constitutional prohibition against unreasonable discrimination for or against another company seeking to do business on its road "does not necessarily imply that it must stop at the junction of one and interchange business there, because it has established joint depot accommodations and provided facilities for doing a connecting business with another company at another place." The Chief Justice further said (110 U. S. 680, 4 Sup. Ct: 191, 28 L. Ed. 291):

"At common law, a carrier is not bound to carry except on his own line, and we think it quite clear if he contracts to go beyond he may, in the absence of statutory regulations to the contrary, determine for himself what agencies he will employ."

In Express Cases, 117 U. S. 1, 6 Sup. Ct. 542, 628, 29 L. Ed. 791, it was held that railroad companies were not bound to furnish, in the absence of statute, to all independent express companies equal facilities for doing an express business upon their passenger trains. In the cases, so far as we have discovered, in which railroads have been held obligated to make connections for the passage of cars over their tracks, or to run their cars over the tracks of others, or to permit other carriers to use their wharves or other terminals, there have existed direct statutory requirements to such effect, many of the cases denying the existence of obligation otherwise. See, for illustration, Railroad Co. v. Minnesota, 186 U. S. 263, 22 Sup. Ct. 900, 46 L. Ed. 1151; Mich. R. R. Commission v. Mich. Central R. R. Co., 168 Mich. 230, 132 N. W. 1068; Stockyards Co. v. L. & N. Ry. Co., 192 U. S. 568, 24 Sup. Ct. 339, 48 L. Ed. 565; L. & N. Ry. Co. v. West Coast, etc., Co., 198 U. S. 483, 25 Sup. Ct. 745, 49 L. Ed. 1135; L. & N. Ry. Co. v. Stockyards Co., 212 U. S. 132, 29 Sup. Ct. 246, 53 L. Ed. 441; Grand Trunk Ry.

Co. v. Mich. R. R. Commission, 231 U. S. 457, 34 Sup. Ct. 152, 58 L. Ed. 310; Vincent v. C. & A. R. R. Co., 49 Ill. 33; People v. C. & N. W. Ry. Co., 57 Ill. 436.

It is difficult to find basis for a greater obligation on the part of a railroad company to give a switch track connection to a shipper than to another railroad company, especially as the latter is engaged in public transportation, while the former may not be. Judge Taft, speaking for this court in Jones v. Newport News & M. V. Co., 65 Fed. at page 738, 13 C. C. A. 95, in denying the common-law obligation of a railroad company to continue a switching connection actually in use for a period of years, said:

"It may safely be assumed that the common law imposes no greater obligation upon a common carrier with respect to a private individual than with respect to the public."

If the obligation here in question existed at all at common law, it was too shadowy to be of practical value; and its express imposition by state statutes, as well as to a limited extent by the Interstate Commerce Act, evidences a legislative belief in its nonexistence otherwise. Indeed, even the Interstate Commerce Act does not command strict uniformity of treatment with respect to facilities of shipment, but forbids only undue or unreasonable preference. (Act Feb. 4, 1887, c. 104, § 3, 24 Stat. L. 380 [Comp. St. 1913, § 8565]) Texas & Pacific Ry. Co. v. Interstate Commerce Commission, 162 U. S. 197, 219, 16 Sup. Ct. 666, 40 L. Ed. 940. It was not until June 29, 1906, that Congress attempted express regulation of switching connections; and even then the requirement was made subject to the limitations that the connection is reasonably practicable, can be put in with safety, and "will furnish sufficient business to justify the construction and maintenance of the same." (Act June 29, 1906, c. 3591, 34 Stat. 585 [Comp. St. 1913, § 8563]); Winters, etc., Co. v. Chicago, M. & St. P. Ry. Co., 16 Interst. Com. R. 587; Judson on Interstate Commerce, § 158. And in Interstate Commerce Commission v. D., L. & W. R. Co., 216 U. S. 531, 537, 30 Sup. Ct. 415, 417 (54 L. Ed. 605), Mr. Justice Holmes, in speaking of the switch connection amendment referred to, said:

"The statute creates a new right not existing outside of it. Wisconsin, Minn. & Pac. R. Co. v. Jacobson, 179 U. S. 287, 296 [21 Sup. Ct. 115, 45 L. Ed. 194]"

As evidencing the strict construction of the 1910 amendment to this provision of the Interstate Commerce Act, see United States v. B. & O. S. W. Ry. Co., 226 U. S. 14, 19, 33 Sup. Ct. 5, 57 L. Ed. 104.

[6] We therefore think that the action, whether regarded as brought under the first or second clause of the Ohio act, is equally "upon a liability created by statute." We may add that the mere failure to specify the Buckeye Company as the corporation, or one of the corporations, receiving the alleged discriminatory switching connections, was merely matter of indefiniteness and was not fatal; for defendant had the right to ask such specification, and, failing to do so, cannot complain of its lack. See Gen. Code Ohio, § 11336. No complaint of this nature is presented by defendant's brief.

[7] The petition, in our judgment, sufficiently states a case under the first clause of the statute, and there was thus no error in overruling the demurrer. The case was tried, however, as one arising under the second clause, viz., on the theory that defendant was interested in the freights of the Buckeye Company, and it is strongly urged, not only that the petition does not allege such interest, but that there was no evidence tending to show it. The petition alleges that defendant and its officers, directors, and stockholders were "interested in and were owners of the stock of corporations owning and operating coal mines," which were given switching connections with defendant's road. Manifestly, the statutory term "freight owned" refers to what is carried as freight, which in this case was coal. The result of the decisions of the Supreme Court in United States v. Delaware & Hudson R. R. Co., 213 U. S. 403, 415, 29 Sup. Ct. 527, 539 (53 L. Ed. 836), and United States v. Lehigh Valley R. R. Co., 220 U. S. 257, 272, 31 Sup. Ct. 387, 55 L. Ed. 458, would seem to be that the words "any article or commodity * * * which it may own in whole or in part, or in which it may have any interest, direct or indirect," found in the commodities clause of the Hepburn Act, do not embrace the interest of a carrier in a bona fide producing corporation, as the result of the carrier's mere ownership of stock therein, yet do embrace such carrier's interest where the latter so exerts its power as a stockholder in a producing corporation to so commingle the affairs of both as necessarily to make them practically indistinguishable, and thus to make the two corporations practically one for all purposes.

In the instant case, as submitted to the jury, defendant's liability was made to depend upon a finding that it had so used its power as a stockholder in the coal company as to make the latter virtually a mere dependency or department of the railroad company. On a careful review of the evidence, we are of opinion that it fairly tends to support such finding. Nevertheless the question remains whether the petition sufficiently alleges the situation so found to exist, and unless it is apparent that failure to so allege could not reasonably have prejudiced defendant, it would be our duty to consider the question of pleading. But if we have rightly concluded that the petition states a case under the first clause, and that the liability declared thereby is "a liability created by statute," it would seem immaterial whether a case under the second clause was either alleged or proven; for, eliminating defendant's alleged interest in the Buckeye Coal Company, the same facts relied upon as giving (and necessary to create) a right of action under the second clause of the statute would equally give such right under the first clause, since the first clause, which requires that all shippers shall have the "same and equal opportunities and facilities" for shipping freights of all kinds, would be violated by refusing to plaintiff a switching connection given to another shipper under the same conditions and for the shipment of the same kind of freight, whether or not defendant had any ownership of or interest in the coal of such other shippers.

There is thus no inconsistency between the acts proved or sought to be proved by plaintiff and the acts necessary to support recovery under the first clause, and we have no difficulty in holding that the proofs tended to show a violation of the first clause of the statute. It there-

fore cannot, we think, reasonably be supposed that the jury, which found a verdict for plaintiff under the second clause, would not have similarly found under the first, or that defendant could have been prejudiced by a submission of the case according to plaintiff's contention (possibly made under stress of the defense of limitation) that defendant was interested in the Buckeye Company's freights (so making defendant's liability depend upon a finding of such interest), unless it is reasonably to be apprehended that the jury might have failed to find a verdict, or would have found a smaller verdict, on a theory involving only general discrimination, if uninfluenced by testimony of special discrimination in favor of a dependency of the railroad company. It does not appear that plaintiff's measure of damages would legally be affected by defendant's actual relation to the Buckeye Company. However, it is not denied that defendant was a stockholder in that company, and the difference, so far as its effect upon the verdict is concerned, between such relation and the claimed departmental relation is not well defined. As a practical proposition, it would seem likely that such stockholding relation would have appeared, had recovery been confined to the first clause; but, whether so or not, we would scarcely be justified in ordering a new trial on a vague suspicion that the verdict might have been different, had the proof of an admitted relation not appeared. The evidence that defendant extended to other shippers than the Buckeye Company switching connections denied to plaintiff, in the freight of which other shippers there was no proof that defendant was interested, would have been equally admissible under the first clause. Moreover, the court reduced the actual recovery substantially below the verdict, and presumably to an amount which it considered not unreasonable. We are thus constrained to think it unnecessary to determine whether the petition sufficiently alleged defendant's interest in the Buckeye freights.

It is urged that the action cannot be maintained because plaintiff did not submit its claim of alleged discrimination to the Interstate Commerce Commission. We are not impressed with this contention. The Interstate Commerce Act has no application to intrastate commerce (Interstate Commerce Commission v. Brimson, 154 U. S. 447, 457, 155 U. S. 3, 14 Sup. Ct. 1125, 38 L. Ed. 1047); and it follows that state statutes regulating commerce are void only so far as they affect commerce of an interstate nature. We think the District Judge rightly held that the petition did not allege that plaintiff had been denied the connection with respect to interstate freights; and we have been cited to no testimony tending to show such claim upon the trial, or even that plaintiff is engaged in interstate transportation. For these reasons, if for no other, we think the Interstate Commerce Act has no application to the present action.

The judgment of the District Court is accordingly affirmed, with costs.