# PARSONS *v.* CHICAGO AND NORTHWESTERN RAILWAY COMPANY.

## ERROR TO THE COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 198. Argued March 8, 9, 1897. — Decided May 24, 1897.

The right of a shipper of goods over a railway, who pays to the railroad company reasonable rates for the transportation of the goods to the place of destination, to recover from such company the excess of such payment over the rates charged to shippers of similar goods to the same destination from another place of shipment of the same or greater distance from it, is a right growing out of the interstate commerce act; and, being in the nature of a penalty, can be enforced only by strict proof, showing clearly and directly the violations complained of.

The portion of a through rate received by one of several railway-companies transporting the goods as interstate commerce, may be less than its local rate.

The only right of recovery given by the interstate commerce act to the individual, is to the "person or persons injured thereby for the full amount of damages sustained in consequence of any of the violations of the provisions of this act"; and before any party can recover under the act, he must show, not merely the wrong of the carrier, but that that wrong has operated to his injury.

THIS was an action commenced by the plaintiff in error, plaintiff below, in the Circuit Court of the United States for the Southern District of Iowa to recover of the defendant fifteen hundred and fifty dollars on account of alleged vio-

lations of the interstate commerce act. An amended and substituted petition was filed which, in five counts, stated plaintiff's causes of action. To this the defendant demurred, and the demurrer having been sustained judgment was entered in its favor. The plaintiff took the case to the Court of Appeals of the Eighth Circuit, by which court the judgment was affirmed. 27 U. S. App. 394. Thereupon the case was brought here on writ of error.

The first count alleged facts which, as claimed, show that the defendant had such relations to the Fremont, Elkhorn and Missouri Valley Railroad Company and the Sioux City and Pacific Railroad Company that the lines of those railroads, together with that of the defendant, were under a common control and management, and therefore that the defendant was to be treated for all practical purposes as the owner of a single line from the points in Nebraska, hereinafter mentioned, to Chicago. It stated the distances from those points to Chicago, and also from the places in Iowa along the line of defendant's road from which the plaintiff made his shipments, these latter distances being substantially less than the former. Then after a general averment that the Nebraska rates to Chicago had always theretofore been greater than the Iowa rates, it alleged that on December 30, 1887, the defendant, for the purpose of giving unlawful preference to the shippers of corn and oats in Nebraska, and to unlawfully discriminate against the plaintiff and other shippers of corn and oats in Iowa, put in force from Nebraska points a certain freight tariff upon corn and oats, in words and figures following:

"C. & N. W., G. F. D. No. 2927, superseding G. F. D. No. 2724, F., E. & M. V. and S. C. & P. G. F. D. 949 and G. F. D. No. 859 of 1887.

"Chicago and North Western Railway, Fremont, Elkhorn and Missouri Valley and Sioux City and Pacific Railway.

"Joint tariff on corn and oats in carloads, taking effect December 30, 1887, to Rochelle, Ill., when destined to New York, Boston, Philadelphia, Baltimore.

| From | Per 100 lbs. |
|---|---|
| Blair, Neb............................. | 11 |
| Kennard, Neb........................ | 11 |

&ast;  &ast;  &ast;  &ast;  &ast;

[Here follow rates from many other Nebraska points, which are omitted as immaterial in the case.]

"Prepaid.  Way bill through to Rochelle, Ill., via Missouri Valley, at rates given above.  For rates from Rochelle to Baltimore, Philadelphia, New York and Boston see C. & N. W. G. F. D. No. 2604, November 25, 1878, amendments or subsequent issues.

"H. R. McCullough,
"*G. F. A., C. & N. W. R.*

"K. C. Morehouse,
"*G. F. A., S. C. & P. and F. E. & M. V. R.'s.*"

After this it continued :

"Plaintiff avers that said freight tariff was never printed in type and was never circulated or published at any of the stations on defendant's road in the State of Iowa, and no copy thereof was ever filed with the Interstate Commerce Commission, as required by law, and the existence of the same was concealed from the knowledge of plaintiff and of shippers in the State of Iowa upon the line of defendant's road, and the benefits and advantages of the rates specified in such tariff were denied to plaintiff and shippers on the line of defendant's road in the State of Iowa.

"Plaintiff avers that said special tariff remained in force at the several stations named therein upon the line of the Fremont, Elkhorn and Missouri Valley Railroad in the State of Nebraska from December 30, 1887, up to the 1st of February, 1888, and large quantities of corn and oats were shipped during said time upon and over the several roads aforesaid, to Turner and Rochelle, and thence to Chicago, Ill., at the rates therein specified, to wit, the sum of 11 cents per 100 pounds from the stations of Blair and Kennard, Neb.

"Plaintiff avers that between the 30th day of December,

A.D. 1887, and the 1st day of February, A.D. 1888, and at the several dates named in the Schedule No. 2 attached to original petition and made a part of this petition, plaintiff had for shipment at Correctionville, Iowa, aforesaid, the number of pounds of corn and oats in said schedule specified, and plaintiff was prevented and deprived by reason of the matters herein alleged, of the right to ship the same upon the terms and at the rate given, as aforesaid, to the shippers in the State of Nebraska; and plaintiff then and there was compelled to ship and did ship said corn and oats on and over the road of defendant from said station of Correctionville to Chicago, Ill., and defendant then and there demanded and received for said service the sum of 21 cents per 100 pounds for the transportation of said corn and oats a distance of only 475 miles, the same being a less distance, and for a like and contemporaneous service over the same line in the same direction, under substantially similar circumstances, as the transportation of corn and oats, as aforesaid, from Blair and Kennard and other points in Nebraska to Chicago, Ill.

" Plaintiff avers that the fixing of said points of Turner and Rochelle as the pretended terminus of the shipment of corn and oats under said special tariff of December 30, 1887, was a mere device to evade the law. That Turner and Rochelle were not grain markets and had no elevators or facilities for handling grain, and said grain was intended to be, and was, in fact, transported by defendant to Chicago, Ill., and was then sold on the market or delivered to connecting roads for eastern seaboard points.

" Plaintiff avers that the charges so made, demanded, received and collected from plaintiff as aforesaid were unlawful, unreasonable and unjust, and contrary to the provisions of an act of Congress entitled 'An act to regulate commerce,' approved February 4, 1887, in that an unlawful preference and discrimination was practised by defendant in favor of shippers of grain in the State of Nebraska and against this plaintiff, a shipper of grain in the State of Iowa, and in that defendant charged, demanded and received a greater compensation for a short than for a longer haul in the same direction, over the

same line, the shorter being included in the longer haul, and being for a like and contemporaneous service in the transportation of a like traffic under substantially similar circumstances.

"Plaintiff avers that the price and value of corn and oats at the dates of said shipment was at Chicago the price at New York and other seaboard points, less the freight, and the price at — in Iowa, was the Chicago price, less the freight, and that plaintiff was damaged by reason of the premises, in a sum equal to the difference in the price charged and received by the defendant and the rate given from Kennard and Blair, Neb., to wit, the sum of 10 cents per hundred pounds upon 241,710 pounds of corn and oats, to wit, the sum of 241.71 dollars, for which sum he asks judgment on this count of his petition, with 6 per cent interest per annum from February 1, 1888."

The next three counts were, so far as any question is involved in this case, substantially like the first.

The fifth count alleged that the defendant was a common carrier, engaged in the business of transporting freight over its line of road in Iowa, Illinois and Nebraska, "and in connection with other railroads in Chicago, east to New York, Philadelphia, Boston, Baltimore and other seaboard points." Then, after stating facts showing plaintiff's interest in the matter, it averred that the defendant "on the 17th day of February, 1888, at all the stations on the said Fremont, Elkhorn and Missouri Valley Railroad in Nebraska between Blair and Skull Creek and each of said points, put in force a certain tariff on corn and oats destined for New York and other seaboard points, whereby it proposed to transport, and did, on and between said 17th day of February and the first day of March, A.D. 1888, transport corn and oats from Blair and other points in Nebraska, on the line of said road, to New York for 36½ cents per 100 pounds, and to Boston for — cents per 100 pounds, and to Philadelphia for 34½ cents per 100 pounds, and to Baltimore for 33½ cents per 100 pounds. Plaintiff avers that all of said points on the Fremont, Elkhorn and Missouri Valley road were a greater distance from

Chicago and from New York and other seaboard points aforesaid than the stations on the defendant's road in the State of Iowa." It alleged a failure to publish such rates, substantially as in the first count, and "that the only rate on corn and oats made known during February, 1888, to shippers at Iowa points on defendant's road was a local rate to Chicago and a rate of 27½ from Chicago to New York, and a correspondingly high rate from Chicago to other seaboard points. That said local rate from Carroll to Chicago was 19 cents per 100 pounds." And concluded as follows:

"Plaintiff avers that between the 17th day of February and the 1st day of March, A.D. 1888, and at the several dates named in Schedules No. 4 attached to original petition and made a part of this petition, plaintiff had for shipment at Carroll, Iowa, aforesaid, the number of pounds of corn and oats in the said schedule described, and plaintiff was prevented and deprived, by reason of the matters herein alleged, of the right to ship the same upon the terms and at the rates given to shippers in the State of Nebraska, and plaintiff then and there was compelled to ship and did ship said corn and oats on and over the road of defendant from said station of Carroll to Chicago, Ill., and defendant then and there demanded and received for said service the sum of 19 cents per hundred pounds for the transportation of said corn and oats to Chicago, and subjected said plaintiff to a further charge of 27½ cents per 100 pounds to transport the same to New York and a like local charge to other seaboard points, or dispose of the same at Chicago at 27½ less per hundred than the price at New York.

"Plaintiff avers that the charges so made, demanded and received and collected as aforesaid were unlawful, unreasonable and unjust, and contrary to the provisions of an act of Congress entitled 'An act to regulate commerce,' approved February 4, 1887, in that an unlawful preference and discrimination was practised by defendant in favor of shippers of grain in the State of Nebraska, and against this plaintiff, a shipper of grain in the State of Iowa, and in that defendant charged and demanded a greater compensation for short

than for a longer haul in the same direction over the same line, the shorter being included in the longer haul and being for a like and contemporaneous service in the transportation of a like traffic under substantially similar circumstances.

" Plaintiff avers that the price and value of corn and oats at the dates of said shipments was, at Chicago, the New York or other seaboard price less the freight, and the price at Carroll, Iowa, was the Chicago price less the freight, and that plaintiff was damaged by reason of the premises in a sum equal to the difference between the aggregate of the two local rates from Carroll to Chicago and from Chicago to New York, to wit, $46\frac{1}{2}$ cents, and the said sum of $36\frac{1}{2}$ cents, the rate given from said Nebraska points to New York, which difference was the sum of 10 per 100 pounds on 107,750 pounds of corn and oats named in Schedule No. 4 aforesaid, for which the plaintiff asks judgment on this second count of his petition."

*Mr. C. C. Nourse* for plaintiff in error.

*Mr. Lloyd W. Bowers* for defendant in error.

*Mr. Assistant Attorney General Whitney* filed a brief on behalf of the Interstate Commerce Commission.

Mr. Justice Brewer, after stating the case, delivered the opinion of the court.

Some preliminary matters deserve notice. The wrongs charged against the defendant took place in the winter of 1887–1888, and affected other Iowa shippers than the plaintiff. Several actions were brought by such shippers on account thereof, and brought by the counsel for this plaintiff. Two of such actions were tried before juries, and resulted in judgments for the plaintiffs. *Osborne* v. *Chicago & Northwestern Railway*, 48 Fed. Rep. 49. These judgments were taken to the Court of Appeals, and in October, 1892, were reversed and the cases remanded for new trials. 10 U. S. App. 430. The plaintiffs then applied to this court for a

certiorari, 146 U. S. 354, which, on December 5, 1892, was denied on the ground that there had been no final judgment. See *Forsyth* v. *Hammond*, 166 U. S. 506, 514. Thereafter, and on December 28, 1892, this amended and substituted petition was filed. Now it is contended that the Court of Appeals read into this petition the facts disclosed by the records in the former cases, and so decided some other case than the one presented. This is a mistake, though it may be that the court construed the allegations of this petition in the light of those facts. And it is not strange that it did so. For, while this being an action in behalf of a different plaintiff, he is not concluded by the evidence introduced on those trials, can state other and different facts, and recover on other and distinct grounds, yet the same acts on the part of the defendant are made in all the cases the basis of relief. Hence, allegations in this petition, which are doubtful in their meaning and susceptible of two constructions, may not unfairly be taken as intended to mean that which the testimony in the former cases showed were the facts. The course of the litigation makes it apparent that the purpose was not simply to present a new case to the same court, but to obtain from a higher court a construction of the law applicable to the facts. The brief of counsel, while it points out what is alleged are differences between the case made in this petition and that established in the prior cases, also discloses that in his judgment the views expressed by the Court of Appeals in those cases were wrong, and that he is seeking the judgment of this court thereon. It was easy, if counsel intended to present an entirely different case, to make the averments so positive and distinct as to clearly distinguish it.

We remark again that there is no averment in this petition that the rates charged to and paid by the plaintiff were, in themselves, unreasonable; that is, it is not claimed that the rates charged for shipping corn from points in Iowa to Chicago were not fair and reasonable charges for the services rendered. The burden of the complaint is the partiality and favoritism shown to places and shippers in Nebraska. The plaintiff is not seeking to recover money which inequitably

and without full value given has been taken from him. He is only seeking to recover money which he alleges is due, not because of any unreasonable charge, but on account of the wrongful conduct of the defendant.

Again, his cause of action is based entirely on a statute, and to enforce what is in its nature a penalty. Suppose that the officials of the defendant company had charged the plaintiff only a reasonable rate for his personal transportation from his home in Iowa to Chicago, and at the same time had, without any just occasion therefor, given to his neighbor across the street free transportation, thus being guilty of an act of favoritism and partiality — an act which tended to diminish the receipts of the railroad company, and to that extent the dividends to its stockholders — such partiality on their part would not, in the absence of a statute, have entitled the plaintiff to maintain an action for the recovery of the fare which he had paid, and thus to reduce still further the dividends to the stockholders. So, but for the provisions of the interstate commerce act, the plaintiff could not recover on account of his shipments to Chicago, if only a reasonable rate was charged therefor, no matter though it appeared that through any misconduct or partiality on the part of the railway officials shippers in Nebraska had been given a less rate.

It was, among other reasons, in order to avoid the public injury which had sprung from such conduct on the part of railway officials that the interstate commerce act was passed, and violations of its provisions were subjected to penalties of one kind or another. But it is familiar law that one who is seeking to recover a penalty is bound by the rule of strict proof. Before, therefore, the plaintiff can recover of this defendant for alleged violations of the interstate commerce act he must make a case showing not by way of inference but clearly and directly such violations. No violation of statute is to be presumed. Now, the tariff set out in the first four counts appears on its face to have been a joint tariff, and stated the rates to be charged from points of shipment to Rochelle or Turner on corn shipped to the four cities of New York, Boston, Philadelphia and Baltimore. It does not pur-

port to be the local rate on grain shipped to Rochelle or Turner, or even to Chicago — the eastern limit of the defendant's road. Nowhere in these counts is there an allegation as to the through rates from Nebraska or Iowa points to the four above-named eastern cities, or to any other place beyond the eastern terminus of defendant's road. There is nothing, therefore, to show that the local rate charged plaintiff from the Iowa place of shipment to Chicago was greater than the through rate charged from Nebraska to the four places on the seaboard, or greater than that charged for like shipments from his place of shipment to the same four places. No figures as to the through rate are given ; no averments as to its relation to the local rates on the defendant's road, whether from Nebraska or Iowa to Chicago. So that if we regard this tariff as being (what on its face it purports to be) a joint tariff, there is no violation of the fourth section of the interstate commerce act, the one containing the long and short haul clause.

But it is said that there is an averment that the fixing or naming of Turner and Rochelle as the pretended termini of the shipments of corn and oats under the special tariff was a mere device to evade the law ; that they were not grain markets, and had no elevators or facilities for handling grain, and that the grain was intended to be, and was in fact, transported by the defendant to Chicago, and there sold on the market or delivered to connecting roads for eastern points. It is this averment which introduces some uncertainty into the case. For if there had been no agreement between the defendant and eastern companies, and no through rates established thereby from Nebraska to the four places named, and this putting forth of the so-called joint tariff was a mere device, under color of which the defendant was shipping grain over its own lines from Nebraska to Chicago only, at less rates than were charged to the nearer points in Iowa, there would have been a violation of the long and short haul clause. But the trouble is the pleader does not distinctly make such a case. He does not allege that there was not such an agreement between the defendant and eastern roads, that there was

not such a joint tariff established, that the grain shipped from Nebraska was not shipped on such tariff, or that the tariff was itself a pretence.   He does say that the naming of the points Turner and Rochelle, as termini of the shipment, was a mere device to evade the law, but what evasion, or how it operated to make the evasion, is not indicated.   It is true he says that the grain was intended to be, and was in fact, transported by the defendant to Chicago.   But it must have been so transported if it was shipped to the termini named in the joint tariff.   It is true also that he alleges that when transported to Chicago the grain was sold on the market or delivered to connecting roads for eastern seaboard points.   But which, he does not advise us.   If the former, that might happen by the shipper's intercepting at Chicago a shipment made under the joint tariff through to one of the four eastern points; if the latter, it would necessarily occur if the shipment was under such tariff.   So the former is consistent with and the latter implies the joint tariff.   Neither makes certain any violation of the long and short haul clause.   On the contrary, the plain implication of the averments of these counts is that there was such a joint tariff (indeed, it is alleged that it was never printed in type, was not circulated or published at any of the stations on defendant's road in Iowa, and no copy thereof filed with the Interstate Commerce Commission, as required by law ; and also that it remained in force up to February 1, 1888, and that the corn shipped from Nebraska was shipped on that tariff) ; and further, that the ground of complaint is not that it did not exist, but that it was not published in Iowa ; that plaintiff was not informed and did not know of its existence, and therefore did not get the benefit of it, but shipped his corn at local rates to Chicago instead of at through rates to the eastern points.   That the portion of a through rate received by one of the companies party thereto may be less than its local rate, is not questioned.   The Interstate Commerce Commission, which has filed a brief in this case, and which has criticised some of the views expressed in the opinion of the Court of Appeals in the *Osborne case,* concedes this, and also that the judgment in that case was

right. All that it contends for is that the total through rate shall be greater than the local rate, so as not to violate in this respect the long and short haul clause.

We pass, therefore, to consider the allegations as to the non-publication of this tariff. It is alleged that it was never printed in type, was never circulated or published at any of these stations on defendant's road in Iowa, that no copy thereof was ever filed with the Interstate Commerce Commission, and that the existence of the same was concealed from the knowledge of the plaintiff and other shippers in Iowa, and the benefits and advantages of the rates therein specified were denied to plaintiff and such other shippers. The burden of this is the ignorance of the plaintiff, through failure to. publish this tariff at Iowa stations. The interstate commerce act, in section 6, requires the railroad company to post in every station along the line of its road its local tariffs. It also requires such carrier to file with the commission copies of all contracts, agreements or arrangements with other common carriers, and also copies of any joint tariffs made with such common carriers, and adds that "such joint rates, fares and charges on such continuous lines so filed as aforesaid shall be made public by such common carriers when directed by said commission, in so far as may, in the judgment of the commission, be deemed practicable; and said commission shall from time to time prescribe the measure of publicity which shall be given to such rates, fares and charges, or to such part of them as it may deem it practicable for such common carriers to publish, and the places in which they shall be published."

In the former cases it was shown that the commission had made a general order requiring the publication of joint tariffs " at every depot or station upon the line of the carriers uniting in such joint tariff, where any business is transacted in competition with the business of a carrier whose schedules are required by law to be made public as aforesaid," and it was there held that the places of shipment in Iowa were not competing points within the scope of this order, and that, therefore, no publication of this tariff at the points named was necessary. Counsel contends that this fact only appeared in

the evidence on the part of the defendant and is not disclosed or suggested in the petition in this case, and that the Court of Appeals improperly based its decision upon the supposed existence of this order. We do not so understand the scope of its opinion. No reference is made to any such order, and the case is discussed upon simply the averments in the petition. The allegation is that this joint tariff was not filed with the commission, and not published at the Iowa stations from which plaintiff made his shipment, and that in consequence thereof he was ignorant of its rates. His argument practically is that if the tariff had been filed with the commission it might have made an order, either general or special, requiring that it be posted at the Iowa stations; that if it had been so posted he might have examined the rates and might have determined to ship his corn, not to Chicago, but to one of the four eastern points named in such tariff. But these "might be's" interfere very materially with the line of sequence. He does not show that he had not already contracts with some consignee in Chicago, New Orleans or some place other than the four eastern points named in the tariff, for shipment to him of all grain at his command. He does not allege that he had or would have made any arrangement with any consignee in any of those points for the receipt and sale of his corn, or even that the extra commissions there would not more than make the difference in rates. In short, he does not allege, either directly or indirectly, that if he had known of these rates he would have shipped his corn, under this tariff, to either of those points, but rests his contention upon the suggestion that the mere difference in the prices would naturally have caused him to ship to one or the other of them, and thus to take advantage of the joint tariff. Every fact which he alleges might be absolutely and fully true, and yet he, with knowledge of the joint tariff, with the privilege of shipping under it, have never offered or sought to forward a single pound of corn to any other place than Chicago. Surely it needs but the statement of this to show that he comes far short of that rule of strict proof which enables one to enforce a penalty for wrong; for, if he would not under any circumstances have shipped to New York, was

compelled by his contracts or any other consideration to ship to Chicago, he cannot say that he was injured by his ignorance of the rate to New York. The only right of recovery given by the interstate commerce act to the individual is to the "person or persons injured thereby for the full amount of damages sustained in consequence of any of the violations of the provisions of this act." So, before any party can recover under the act he must show not merely the wrong of the carrier, but that that wrong has in fact operated to his injury. If he had shipped to New York and been charged local rates he might have recovered any excess thereon over through rates. He did not ship to New York and yet seeks to recover the extra sum he might have been charged if he had shipped. Penalties are not recoverable on mere possibilities. We think, therefore, without attempting to take judicial knowledge of the general order made by the Interstate Commerce Commission in reference to the publication of joint tariffs, the plaintiff has failed in that full and clear showing of injury which is necessary in order to justify a recovery under the interstate commerce act.

With reference to the fifth count, little need be said. In that it is disclosed that the through rates to the four eastern points were largely in excess of the local rate charged by the defendant for shipment to Chicago. Of course, therefore, within any view of the scope of the fourth section — the one containing the long and short haul clause — there was no violation of its provisions.

With reference to the matter of publication, nothing more need be said than has been in reference to such allegations in the prior counts, and as to the complaint of an unlawful preference and discrimination forbidden by the third section of the act, it is sufficient to refer to the fact heretofore noticed of the failure of the plaintiff to show a certain injury to him.

These are all the matters that call for consideration. We see no error in the judgment of the Court of Appeals, and it is

*Affirmed.*

MR. JUSTICE BROWN took no part in the decision of this case.