**RADIO TELEVISIÓN S.A. DE C.V. and Bay City Television, Inc., Appellants,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee.**

· No. 96–1438. .

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 3, 1997.

Decided Dec. 12, 1997.

Norman P. Leventhal, Washington, DC, argued the cause for appellants, with whom Barbara K. Gardner was on the briefs.

Joel Marcus, Counsel, Federal Communications Commission, Washington, DC, argued the cause for appellee, with whom William E. Kennard, General Counsel, and Daniel M. Armstrong, Associate General Counsel, were on the brief. C. Grey Pash, Jr., Counsel, entered an appearance.

Before: WALD, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Radio Televisión, S.A. de C.V., the licensee of Mexico-based XETV, and its domestic affiliate Bay City Television, Inc. (collectively "XETV"), seek review of an FCC order granting Fox Television's application under § 325 of the Communications Act for permission to transmit live television programming to XETV for rebroadcast into San Diego, California. In a prior decision, we vacated a Commission order which held incorrectly that NAFTA required the FCC to abandon its prior position that certain public interest requirements apply to § 325 applications. On remand, the FCC retreated to its prior position, stating that it would condition renewal in five years on whether Fox's foreign affiliate had provided "issue-responsive programming" to its San Diego viewers. Because this requirement does not discriminate against foreign stations in violation of NAFTA, and because the Commission need not renew its explanation for following its long-standing policy, we affirm the Commission's order.

## I. Background

The Communications Act of 1934 (the "Act"), 47 U.S.C. § 151 *et seq.*, subjects radio and television stations that broadcast within the United States to licensing by the FCC, which must inquire as to whether the "public interest, convenience, and necessity will be served by the granting" of a license application. 47 U.S.C. § 309(a). To this end, the FCC must ask whether a broadcaster provides "issue-responsive programming," that is, whether it serves the public interest by providing programming that concerns local issues facing the community to which it broadcasts. *See, e.g., Commercial TV Stations,* 98 F.C.C.2d 1076, 1092–94 (1984) (subsequent history omitted).

Because of the possibility that domestic broadcasters in some areas could evade the Act's requirements by transmitting their signals to a foreign station for rebroadcast into the United States, § 325(c) expressly prohibits such transmissions without an FCC permit. Section 325(d) provides that the "requirements of section 309" shall govern FCC consideration of applications for such permits; thus, in a § 325 proceeding, the FCC must determine whether the "public interest, convenience, and necessity will be served by the granting" of the permit. Since at least

1972, the FCC has considered issue-responsive programming as part of its "public interest" analysis under § 325.

XETV has for many years broadcast programming from its Tijuana, Mexico facilities to viewers in San Diego, California. In 1956, the FCC granted the § 325 application of American Broadcasting Companies, Inc. ("ABC") to transmit programming to XETV for rebroadcast into the domestic market. *See Channel 51 of San Diego, Inc. v. FCC*, 79 F.3d 1187, 1189 (D.C.Cir.1996) (*"Channel 51"*). When ABC filed a renewal application in 1968, a new domestic station, KCST, filed a petition to deny the permit. Based in part on a finding that XETV's programming was "deficient in that it renders no local service meeting the needs and interests of the community," the FCC denied ABC's renewal application. *American Broadcasting Cos., Inc.*, 35 F.C.C.2d 1 (1972) (*"ABC 1972"*), *aff'd per curiam*, 26 R.R.2d 203 (D.C.Cir.), *cert. denied*, 412 U.S. 939, 93 S.Ct. 2773, 37 L.Ed.2d 398 (1973).

More recently, XETV has served as the San Diego affiliate of the Fox Television network. Until 1994, Fox and XETV relied on a practice called "bicycling": Fox transmitted its programming to a U.S. receiving station, which made tapes and physically transported these across the border for XETV to rebroadcast into San Diego. This practice legally avoided the § 325 licensing regime, but did not allow live broadcasts of any sort, which became a problem when Fox acquired the right to broadcast live games of the National Football League in 1994. Fox accordingly sought a § 325 permit for cross-border electronic transmission.

A domestic San Diego broadcaster, Channel 51, filed a petition to deny Fox's § 325 application, arguing that XETV's "issue-responsive programming" was deficient. The FCC eventually granted Fox's permit, in the process reviewing the *ABC 1972* standards in light of the North American Free Trade Agreement ("NAFTA"). The FCC concluded that NAFTA had invalidated its prior position, expressed in *ABC 1972*, that "all of the public interest criteria used in domestic proceedings [should apply] to Section 325 proceedings." *See Fox Television Stations, Inc.*, 10 F.C.C.R. 4055, 4064 (1995) (*"Fox 1"*). Although recognizing that NAFTA permit-

ted it to continue considering programming matters, the Commission held in *Fox 1* that its standards must be more lenient under § 325 than those applied in domestic proceedings. NAFTA's Annex VI directs the Commission to consider electrical interference as the "primary criterion" for evaluating the public interest under § 325, and prohibits discrimination based on nationality and other unnecessary restrictions on trade. Under its reading of NAFTA, the FCC found the issue-responsive programming requirement discriminatory and unnecessarily restrictive of trade, and consequently held that it should no longer apply in § 325 proceedings. *Id.* at 4065–66; *Channel 51*, 79 F.3d at 1191.

In *Channel 51* we vacated that portion of the FCC's decision in *Fox 1* which ruled, based on NAFTA, that the § 309 issue-responsive programming analysis no longer applied to applications under § 325. We noted that the FCC had "already determined, in *ABC 1972*, that the issue-responsive programming requirement is relevant in a § 325 proceeding," and held, applying well-established principles of administrative law, that if the FCC wanted to "depart from its prior ruling, it must provide a reasoned explanation." *Channel 51*, 79 F.3d at 1191; *see also Gilbert v. NLRB*, 56 F.3d 1438, 1445 (D.C.Cir.1995). We noted that the only rationale offered by the FCC for its changed position was the adoption of NAFTA Annex VI, principally because of the provisions therein prohibiting discrimination against foreign broadcasters. For reasons set forth more fully in *Channel 51*, 79 F.3d at 1191–92, we concluded that the FCC's reliance on Annex VI was misplaced and that NAFTA did not support the departure from the reasoning of *ABC 1972*. Indeed, we observed that it would be "well-nigh impossible to concoct" an explanation for "why subjecting a foreign station to the same issue-responsive programming requirement to which domestic stations are subject constitutes discrimination against a foreign station on the basis of its nationality," in violation of NAFTA. *Id.* at 1191. Thus, we vacated the order granting Fox's § 325 permit and remanded for further proceedings.

On remand, the FCC reconsidered its position, based on our decision in *Channel 51*, and decided to reaffirm its original position articulated in *ABC 1972*, namely, that its "Section 325 analysis must include an analysis of the public interest convenience and necessity consistent with Section 309." *Fox Television Stations, Inc.*, 11 F.C.C.R. 14870, 14877, ¶ 21 (1996) (*"Fox 2"*). It then granted the Fox application for a § 325 permit, but conditioned this grant "on XETV's provision of programming that meets the Commission's issue-responsive requirement during the five year authorization term." *Id.* at 14878, ¶ 24. If and when Fox seeks renewal of its permit, it "will be required to show ... whether the programming broadcast by XETV has met the issue-responsive requirement during the term of the initial authorization." *Id.*

## II. Justiciability

■ Fox has not challenged the Commission's conditional grant, but XETV seeks review of the condition imposed on Fox, and indirectly upon its own programming, by the FCC's order in *Fox 2*. XETV claims that it has standing as a "person ... aggrieved" by the Commission's order, and that the appeal is ripe for review. *See* 5 U.S.C. § 702. We hold with some reluctance that XETV has alleged injury sufficient to confer standing and to satisfy the ripeness test of *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

XETV's allegations of injury, at the heart of both standing and ripeness inquiries, amount to this: as a result of the Commission's allegedly unlawful condition on a future renewal application by Fox, XETV must alter its behavior, expending time and money to produce, air, and document the broadcast of issue-responsive programming during the next five years. Even though in five years time Fox might not seek renewal of its § 325 permit, the terms of the FCC order place a burden on XETV to comply with the issue-responsive programming requirement if it wants to preserve any chance of retaining its status as an affiliate of Fox, or any other U.S. network. The Communications Act grants standing before this Court to "any ... person [other than those enumerated in the statute] who is aggrieved or whose interests are adversely affected by any order of the Commission granting or denying" applications, including those under § 325(c). 47 U.S.C. § 402(b)(6). Although the Commission's order was directed to Fox, not XETV, we hold that the condition placed on the grant of Fox's permit would, if unlawfully imposed, adversely affect the interests of XETV within the meaning of § 402(b)(6).

The Commission's argument that XETV suffers no harm from the condition because the station has already made plans to engage in programming that the FCC would consider issue-responsive has some appeal, but we ultimately reject it. XETV's plans may be in response to the forces of the San Diego market, or in response to the arguments made by its competitors during the ongoing § 325 proceedings—plans which may change and adapt according to XETV's business judgment. The condition imposed in *Fox 2* adds a new element: a legal obligation to provide issue-responsive programming to the San Diego market, under a threat to deny a renewal application five years hence. An unlawful imposition of such a duty would constitute an injury to XETV's interests.

■ The Commission has characterized XETV's challenge as unripe, because the agency has not yet determined—and may never need to determine, if Fox does not seek renewal—that XETV has not adequately provided issue-responsive programming. Again the Commission's argument is far from frivolous. However, XETV's allegations appear to meet the ripeness test as articulated in *Abbott Laboratories*, even if only marginally. Under *Abbott Laboratories*, ripeness depends on "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." 387 U.S. at 149, 87 S.Ct. at 1515. First, the substantive issues argued by the parties are "fit for judicial decision." The questions before us depend upon law, not facts: whether the condition violated NAFTA, exceeded FCC authority, or was inadequately explained—not, for instance, whether particular future programming by XETV would or would not satisfy the Commission's issue-responsive requirement. Second, there would be significant hardship to XETV if we

withheld review at this stage. The order has the effect of impelling XETV to attempt to comply with the issue-responsive requirement over the next five years or risk denial of a renewal application at that time. Thus, this is a situation where "the impact of the administrative action could be said to be felt immediately by those subject to it in conducting their day-to-day affairs," *i.e.*, XETV's "primary conduct is affected." *See Toilet Goods Ass'n, Inc. v. Gardner,* 387 U.S. 158, 164, 87 S.Ct. 1520, 1524, 18 L.Ed.2d 697 (1967). Therefore, we hold that XETV's claims are ripe for review.

### III.   Merits

Having prevailed in its skirmish over standing and ripeness, XETV is doomed to lose its battle on the merits. We have already held that the Commission's application of the § 309 issue-responsive programming requirement in proceedings under § 325 does not constitute discrimination between foreign and domestic stations under NAFTA. *See Channel 51,* 79 F.3d at 1191–92. Further, we hold that the FCC was not arbitrary in reverting to its prior interpretation of § 325 after we vacated its *Fox 1* order for failure to provide a reasonable explanation for changing its interpretation.            .

### A.   NAFTA

■ For the most part, XETV's briefs simply rehash arguments we already rejected in *Channel 51*: that is, that NAFTA Annex VI somehow prohibits the application of the § 309 issue-responsive programming requirement to analysis under § 325. XETV does not appear to recognize the futility of relying upon reasoning set forth by the Commission in *Fox 1,* which we rejected in *Channel 51* as incorrect. For example, XETV quotes *Channel 51* as ruling that NAFTA's Annex VI "clearly affects the FCC's *ABC 1972* holding," Appellant's Br. at 13, and argues that the FCC could not therefore simply return to its prior position that § 325 incorporated the public interest requirements of § 309. The quoted passage, in its full context, rejects exactly the argument XETV makes in this second appeal, holding that Annex VI

> clearly affects the FCC's *ABC 1972* holding *that the presence of a domestic compet-*

*itor willing to serve as a network affiliate weighs against granting a permit to a foreign station.* However, the FCC does not explain why subjecting a foreign station to the same issue-responsive programming requirement to which domestic stations are subject constitutes discrimination against a foreign station on the basis of its nationality. Indeed, such an explanation would be well-nigh impossible to concoct.

*Channel 51,* 79 F.3d at 1191 (emphasis added). In the present appeal, no new allegation has been made of discrimination against XETV in favor of a domestic station; indeed, the Commission has granted Fox's application to rebroadcast through its foreign affiliate, and rejected a challenge by at least one of XETV's domestic competitors.

XETV advances several other arguments, contending principally that *ABC 1972* does not mean what the Court and the Commission have said that it means. Without revisiting the substantive discussion on the question of discrimination, fully set forth in *Channel 51,* we shall address a fundamental misconception of XETV. XETV repeatedly protests that the Commission has no authority to condition the "grant of a Section 325 permit on the provision of issue-responsive programming by the *recipient foreign station.*" *See, e.g.,* Appellant's Br. at 21 (emphasis added). Under § 325, the licensee is a *domestic* broadcaster: in this case, Fox Television. The foreign station, XETV, is *never* the recipient of a § 325 permit; at best, it is a third-party beneficiary of a domestic broadcaster's license. Thus, the condition set forth in *Fox 2* is a condition not on the foreign station's permission to broadcast a domestic network's programming, but on the domestic network's permission to use a foreign station to serve a domestic market. There is nothing unreasonable or discriminatory in the Commission's order which we can summarize as requiring a domestic network to serve a local market only via an intermediary which adequately serves the public interest, regardless of whether the local affiliate is located within U.S. borders.

### B.   Proceedings on Remand

■ XETV also claims that the FCC could not return to its *ABC 1972* position after

*Channel 51* without explaining its reasons for doing so or for rejecting further arguments that *ABC 1972* should be abandoned. This argument is specious. In *Channel 51*, we vacated the Commission's *Fox 1* order, and remanded to the FCC for "treatment consistent with this opinion." 79 F.3d at 1192. We held that the Commission had not provided a reasonable explanation for its departure from its prior position, articulated in *ABC 1972*, that § 325 incorporated the issue-responsive programming requirement of § 309. *Id.* Consistent with our opinion in *Channel 51*, the Commission on remand reverted to its previously established position that the issue-responsive programming requirement should apply to § 325 proceedings. It then—generously—applied the requirement only prospectively to the next five years of XETV's programming.

XETV mischaracterizes our decision in *Channel 51* as "remand[ing] the *Fox 1* decision to the Commission for the narrow purpose of requiring the FCC to provide supplemental support for its changed interpretation of Section 325, not to direct the abandonment of that interpretation." Appellant's Reply Br. at 17. In fact, we did no such thing. *Channel 51* vacated *Fox 1*. We did not leave open to the Commission on remand only the narrow range of options XETV describes. When we hold that an agency has not provided an adequate explanation for its action, the "practice of the court is ordinarily to vacate the [action]." *Illinois Public Telecommunications Ass'n v. FCC*, 123 F.3d 693 (D.C.Cir. 1997). Indeed, some contend that this is the *only* option available. *See Checkosky v. SEC*, 23 F.3d 452, 490–92 (D.C.Cir.1994) (Randolph, J., writing separately). In any event, although vacating an order does " 'not foreclose[ ] the possibility that the Commission may develop a convincing rationale' for re-adopting the same [order] on remand," *Illinois Public Telecomm. Ass'n*, 123 F.3d at 694 (quoting *Petroleum Comm., Inc. v. FCC*, 22 F.3d 1164, 1173 (D.C.Cir.1994)), there is certainly no mandate that the agency seek to develop such a rationale. It is at least as likely that the agency will abandon its unsuccessful effort.

In *Channel 51*, we held that NAFTA did not justify the Commission's departure from its prior position that it "should apply all of the public interest criteria used in domestic proceedings to Section 325 proceedings." 79 F.3d at 1191 (quoting *Fox 1*, 10 F.C.C.R. at 4064). Our remand for "treatment consistent with this opinion" leaves open a wide range of actions. The Commission could have sought to maintain its changed interpretation, if it could provide adequate justification, but it was equally free to acknowledge, as it did, that its change in interpretation was incorrect. While it is fixed law that an agency must justify a change in its interpretations, we have never held that the agency must renew its explanation each time it applies its fixed policy. *See, e.g., Hall v. McLaughlin,* 864 F.2d 868, 873 (D.C.Cir.1989) ("[W]here a particular agency action does not appear to be inconsistent with prior decisions, the agency's explanation need not be elaborate."). Given that *Fox 1* offered no more than an incorrect application of NAFTA to justify changing its long-standing interpretation of § 325, the Commission's return to its prior position comes as little surprise.

## IV. Conclusion

The order of the Commission in *Fox 2* is affirmed in all respects.