Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports.  Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 13, 2009          Decided January 15, 2010

No. 08-1110

SFPP, L.P.,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION
AND UNITED STATES OF AMERICA,
RESPONDENTS

ULTRAMAR INC., ET AL.,
INTERVENORS

———

On Petition for Review of an Order
of the Federal Energy Regulatory Commission

———

*Charles F. Caldwell* argued the cause for petitioner.  With him on the briefs were *Catherine O'Harra* and *D. Ryan Nayar*.

*Jennifer S. Amerkhail*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent.  With her on the brief were *John J. Powers III* and *Robert J. Wiggers*, Attorneys,

U.S. Department of Justice, and *Cynthia A. Marlette*, General Counsel, and *Robert H. Solomon*, Solicitor.

*Steven A. Adducci* argued the cause for intervenors. With him on the brief were *R. Gordon Gooch*, *Elisabeth R. Myers*, *George L. Weber*, *Thomas J. Eastment*, *Gregory S. Wagner*, *Christina M. Vitale*, *Marcus W. Sisk Jr.*, and *Frederick G. Jauss IV*. *Joshua B. Frank* entered an appearance.

Before: ROGERS and GRIFFITH, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Following the remand in *BP West Coast Products, L.L.C. v. FERC*, 374 F.3d 1263, 1270–71 (D.C. Cir. 2004), the Federal Energy Regulatory Commission ("FERC") ordered petitioner SFPP, L.P. ("SFPP") to pay reparations to the complaining shippers using its Watson Station drain-dry facilities. *SFPP, L.P.*, 122 FERC ¶ 61,126 (2008) ("*Order on Initial Decision*"). SFPP contends that notwithstanding its failure to file the Watson Contract rates, FERC's decision was arbitrary and capricious for failing to explain why it rejected its previous findings that special circumstances justified enforcement of the unfiled rate contracts. The circumstances surrounding the shippers' agreement to the Watson Contract rates, SFPP maintains, "allay any reasonableness or discrimination concerns" and "manifestly present good cause." Pet'r's Br. 12. FERC responds that the unfiled contract rates could not supplant its authority to ensure rates are just and reasonable and that it reasonably determined the payment of reparations was an appropriate remedy. Concluding that FERC's determination of the rates was not arbitrary or capricious and that the remedy was within its discretion, we deny the petition for review.

## I.

The background to this appeal appears in *BP West Coast Products,* 374 F.3d at 1273–74.  Between 1989 and 1991, SFPP and its shippers negotiated a set of contracts for the construction of "drain-dry" facilities at Watson Station, which speeded switching between different types of petroleum products stored in SFPP's tanks.  As part of the contracts, the shippers agreed to pay an additional charge per barrel of 3.2 cents to cover construction costs and provide SFPP a return on its investment in the drain-dry facilities.  SFPP did not file the Watson Contract rates with FERC, concluding its drain-dry services were not jurisdictional.

Responding to complaints filed in the mid-1990s by various shippers, FERC ruled in Opinion No. 435 that although SFPP should have filed its Watson Contract rates, SFPP would not be ordered to pay reparations and the Watson Contract rates would be deemed reasonable.  *SFPP, L.P.,* 86 FERC ¶ 61,022 at 61,074–76 (1999) ("Opinion No. 435").  FERC relied on section 1803 of the Energy Policy Act of 1992 ("EPAct"), Pub. L. No. 102–486, 106 Stat. 2776, 3011, *reprinted in* 42 U.S.C. § 7172 note, which limited the ability of shippers to challenge pipeline rates "in effect" for a full year as of October 24, 1992 and deemed such rates, with exceptions not applicable here, just and reasonable.  FERC concluded that although the Watson Contract rates were not on file, the charges for the Watson Station drain-dry facilities were the equivalent of lawful rates because the rates were in effect prior to the EPAct's enactment on October 24, 1992 and the shippers had failed to establish "substantially changed circumstances," EPAct § 1803(b), 106 Stat. at 3011.  *See* Opinion No. 435 at 61,075-76. FERC noted that the complaining shippers were sophisticated parties that negotiated sophisticated contracts, and that it would be inequitable to change the negotiated rates years after the

contracts were signed. *Id.* at 61,075. FERC denied rehearing. *SFPP, L.P.*, 91 FERC ¶ 61,135 at 61,502 (2000) ("Opinion No. 435-A"). FERC reasoned that "if [the rates] had been filed . . . , it is clear that they would have been grandfathered" under the EPAct, Opinion 435-A at 61,502.

This court vacated Opinion Nos. 435 and 435-A. *BP West Coast Prods.,* 374 F.3d at 1270–71. As relevant, the court concluded that FERC's reasoning on the significance of not filing the Watson Contract rates was "fundamentally flawed" and "vacated this portion of [FERC's] order." *Id.* at 1274. Observing that if FERC correctly interpreted section 1803 of the EPAct only to apply to filed rates, then FERC could not grandfather unfiled rates on the assumption no challenge would have been brought. *Id.* Moreover, the court found FERC's reasoning afforded no assurance that all the Watson Contract rates had been in effect 365 days as of October 24, 1992. *Id.* The court therefore granted the petition and remanded regarding whether the rates were grandfathered. *Id.* at 1312.

On remand, FERC ruled that SFPP's Watson Contract rates could not be grandfathered. *SFPP, L.P.*, 111 FERC ¶ 61,334 at 62,457 ("*Order on Remand and Rehearing*"). FERC found that regardless of whether the rates were filed, the Watson Contract rates became effective on November 1, 1991, less than 365 days before October 24, 1992, and thus could not be grandfathered under the EPAct. *Id.* at 62,458. Thereafter, SFPP and the complaining shippers settled all outstanding issues, except two legal issues, and stipulated that any reparations amount would be based on a shipping rate of between 0.48 and 0.28 cents per barrel (subtracted from the 3.2 or 3.5 cents per barrel actually charged by SFPP), plus interest, with a specific shipping rate stipulated for each year between 1991 and 2005. The two reserved legal issues were: (1) whether the Watson Contract rates established the rate level or limited reparations before

April 1999, and (2) the calculation of the period for which any reparations payments would be due. FERC approved this settlement, *SFPP, L.P.*, 116 FERC ¶ 61,116 (2006), and referred the two reserved legal issues to an Administrative Law Judge ("ALJ"), who ruled that the Watson Contract rates did not establish the rate for service because they had not been filed and that the reparation payment period for each shipper would be limited to two years before the shipper's complaint was filed, and awarded reparations to the complaining shippers in the amounts stipulated, *see SFPP, L.P.*, 118 FERC ¶ 63,033 at 66,171–72 (2007).

Upon exceptions filed by SFPP, FERC affirmed that SFPP had violated sections 6(1) and 6(7) of the Interstate Commerce Act ("ICA") by failing to file the Watson Contract rates. *See Order on Initial Decision*, 122 FERC at 61,649–50. FERC noted that ICA section 6(1) requires that common carriers such as SFPP "shall file" their rates, and that ICA section 6(7) prohibits carriers from transporting property "unless the rates . . . have been filed" with FERC, and concluded therefore that the carrier's state of mind when deciding whether it needs to file a rate is not relevant under the ICA. *See Order on Initial Decision*, 122 FERC at 61,649–50. FERC interpreted the Supreme Court's decision in *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116 (1990), as viewing these ICA rate filing requirements as necessary to prevent unreasonable or discriminatory rates. *See Order on Initial Decision*, 122 FERC at 61,649. FERC also noted that this court's decision in *City of Piqua, Ohio v. FERC*, 610 F.2d 950 (D.C. Cir. 1979), "is quite clear that the mutual agreement of the parties does not relieve the pipeline involved of the fundamental obligation to file the contract with [FERC]." *Order on Initial Decision*, 122 FERC at 61,650. FERC further ruled that it was a proper exercise of its remedial discretion to order reparations for charges above the stipulated just and reasonable rates, reasoning that the shippers

were not required to establish damages because the settlement agreement established the amount of any reparations and reserved the question of whether reparations were due, that the Watson Contract rates did not supersede the ICA rate filing requirement even if the contract negotiations were voluntary arms-length transactions, that SFPP received the quantum meruit value of its drain-dry services, and that the record did not establish that the Watson Contract rates were just and reasonable rather than an exercise of SFPP's market power. *See id.* at 61,650–52.

## II.

SFPP petitions for review of whether the Watson Contract rates established the rate level or limited reparations for the period before April 1999, when its filed rates became effective. This court reviews FERC's orders to determine whether they are arbitrary or capricious, an abuse of FERC's discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A); *see, e.g.*, *Sithe/Independence Power Partners, L.P. v. FERC*, 165 F.3d 944, 948 (D.C. Cir. 1999). The court will "'defer to [FERC's] decisions in remedial matters' and reject [its] choice of an equitable remedy only if it lacks a 'rational basis.'" *Constellation Energy Commodities Group, Inc. v. FERC*, 457 F.3d 14, 22–23 (D.C. Cir. 2006) (quoting *Koch Gateway Pipeline Co. v. FERC*, 136 F.3d 810, 816 (D.C. Cir. 1998)).

SFPP concedes that because the court vacated Opinion Nos. 435 and 435-A in *BP West Coast Products*, 374 F.3d at 1270–71, FERC "had the discretion to reconsider the whole of its original decision," *Southeastern Michigan Gas Co. v. FERC*, 133 F.3d 34, 38 (D.C. Cir. 1998), and "not merely those aspects of the decision related to grandfathering," Reply Br. 6. However, observing that when changing course an agency must supply a reasoned analysis, *see Motor Vehicle Mfrs. Ass'n v.*

*State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 57 (1983), SFPP contends that FERC has failed to explain why on remand it no longer credits the findings in Opinion Nos. 435 and 435-A that special circumstances justified enforcement of the Watson Contract rates. These findings, SFPP maintains, are separate and apart from the vacated sections of Opinion Nos. 435 and 435-A on grandfathering.

This court vacated Opinion Nos. 435 and 435-A in their entirety, *BP West Coast Prods.*, 374 F.3d at 1271, and FERC, in responding on remand, has engaged in no change of course for FERC to explain as SFPP contends. *See Radio Televisión S.A. de C.V. v. FCC*, 130 F.3d 1078, 1083 (D.C. Cir. 1997). The "changing its course" analysis of *State Farm*, 463 U.S. at 41, is not the standard. Although FERC did state in Opinion 435 that it would be unfair to award reparations when the contracts were the result of bargaining between sophisticated parties, FERC premised its reasoning on its initial conclusion that SFPP had not violated its rate filing obligation. *See* Opinion No. 435, 86 FERC at 61,074–76. Once this court determined that FERC's application of the EPAct's grandfathering provisions was erroneous, an entirely different question was presented to FERC, and its answer to that question was completely new and in no sense a deviation from past policy.

On remand FERC was obligated to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006) (quoting *State Farm*, 463 U.S. at 43). To satisfy this standard, and to the extent SFPP suggests the court vacated only the analysis in Opinion Nos. 435 and 435-A regarding grandfathering, *see BP West Coast Prods.*, 374 F.3d at 1312, FERC explained that it had erroneously interpreted *City of Piqua,* 610 F.2d 950, and ignored *Maislin*, 497 U.S. 116, in not

requiring SFPP to file its rates despite the agreements of SFPP with the shippers. *See Order on Initial Decision*, 122 FERC at 61,650. SFPP's attempt to challenge FERC's interpretation of this precedent is unpersuasive, as are the other precedents on which it relies.

The ICA requires oil pipelines to file the rates they charge shippers to use their pipelines, and provides a pipeline shall not provide transportation unless the rates are on file with FERC. *See* 49 U.S.C. app §§ 6(1), 6(7) (1988); 49 U.S.C. § 60502; *see also Frontier Pipeline Co. v. FERC*, 452 F.3d 774, 776 (D.C. Cir. 2006). A pipeline is liable for damages for violation of the ICA. *See* 49 U.S.C. app § 8 (1988). Additionally, a pipeline may be ordered to pay reparations, subject to a two-year limitation. *See id.* § 16(3)(b)*; BP West Coast Prods.*, 374 F.3d at 1306. In *Maislin*, the Supreme Court explained that "adherence to unfiled rates[] undermines the basic structure of the [ICA]," 497 U.S. at 132, and that "[t]he duty to file rates with [FERC], and the obligation to charge only those rates, have always been considered essential to preventing price discrimination and stabilizing rates," *id.* at 126 (citations omitted). Contrary to SFPP's view, the fact that the Court was addressing rates negotiated below the filed rate, *see id.* at 130, rather than unfiled negotiated rates, does not detract from its interpretation of the statutory obligation to charge only filed rates. Nor did *City of Piqua* hold, as SFPP suggests, that an unfiled contractual rate agreement was enforceable, but instead involved a filed contractual rate that FERC determined was reasonable and, upon finding good cause, allowed to be enforced from the initial date of the contract rather than from the date the contract rate was filed. *See City of Piqua*, 610 F.2d at 954–55.

Although *Ets-Hokin & Galvan, Inc. v. Maas Transport, Inc.*, 380 F.2d 258, 260 (8th Cir. 1967), and four district court

opinions[1] cited by SFPP recognized that voiding contracts is not necessarily an appropriate remedy for violating the ICA, the courts acknowledged other penalties under the ICA could still apply. Moreover, FERC did not void the Watson Contracts but awarded SFPP the quantum meruit value of its performance under them. *See Order on Initial Decision*, 122 FERC at 61,652. The other cases on which SFPP relies involve different statutory schemes,[2] and do not respond to FERC's concern that the record before it failed to "establish[] that the [Watson Contract] rate[s] . . . unequivocally reflected effective competition at the time the contractual charge became effective" and was not "sufficiently clear to warrant a conclusion that the prophylactic purposes of the [ICA] would not be compromised by denying reparations." *Order on Initial Decision*, 122 FERC at 61,651.

SFPP also contends that FERC unreasonably disregarded that its failure to file the Watson Contract rates was a good faith error regarding FERC's jurisdiction over the drain-dry facilities. However, FERC concluded that the parties' joint stipulation of facts did not support SFPP's claim of good faith jurisdictional error, and further that the ICA's filing requirement should not depend on FERC's interpretation of a party's good faith. FERC noted, moreover, that the ICA imposes the filing requirement on carriers rather than shippers, and that SFPP could have protected

---

[1] *See Land Ocean Logistics, Inc. v. Aqua Gulf Corp.*, 68 F. Supp. 2d 263, 271 (W.D.N.Y. 1999); *Reo Distribution Servs., Inc. v. Fisher Controls Int'l, Inc.*, 985 F. Supp. 647, 648-49 & n.5 (W.D. Va. 1995); *Dan Barclay, Inc. v. Stewart & Stevenson Servs. Inc.*, 761 F. Supp. 194, 204 (D. Mass. 1991); *Concord Indus., Inc. v. K.T.I. Holdings, Inc.*, 711 F. Supp. 728, 730 (E.D.N.Y. 1989).

[2] *See Morgan Stanley Capital Group Inc. v. Pub. Util. Dist. No. 1*, — U.S. —, 128 S.Ct. 2733, 2738, 2746–47 (2008); *Borough of Ellwood City v. FERC*, 583 F.2d 642, 646–48 (3d Cir. 1978).

itself by following the traditional practice of filing a rate with a motion to dismiss, thereby gaining the benefit of a type of safe harbor against the risk of reparations. *See id.* at 61,650.

SFPP's contention that FERC erred when awarding reparations because the shippers failed to prove that they had suffered damage from the rates negotiated in the Watson Contracts fares no better. SFPP relies on *Parsons v. Chicago & Northwestern Railway Co.*, 167 U.S. 447, 460 (1897), in which the Supreme Court stated that under the ICA a complainant "must show, not merely the wrong of the carrier, but that that wrong has in fact operated to his injury." However SFPP fails to consider the context of this statement, which discussed why "[p]enalties are not recoverable on mere possibilities" and indicated that appropriate damages would be the excess rate actually, rather than theoretically, paid by a shipper. *Id.* Intervenor shippers point out that such a calculation of damages and reparations is well-established, citing the ruling in *Memphis Freight Bureau v. Kansas City Southern Railway Co.*, 17 I.C.C. 90, 91–92 (1909), that "there are no damages in any proper sense of the word unless the shipper has been compelled to pay more than a reasonable rate." FERC determined that "[t]he settlement agreement stipulates how the just and reasonable rate would be defined (retrospectively) if liability attaches" to SFPP. *See Order on Initial Decision*, 122 FERC at 61,651. SFPP's reliance on *Mobil Oil Corporation v. Federal Power Commission*, 417 U.S. 283 (1974), is to no avail because there the Supreme Court held that a non-unanimous settlement proposal alone was not sufficient to establish that the rate structure in the proposed settlement was just and reasonable, *id.* at 312–313, while in the instant case FERC approved the parties' settlement agreement and its reparation rates, *see SFPP, L.P.*, 116 FERC ¶ 61,116. As FERC explained, having approved the parties' settlement agreement establishing the amount of any reparations, the only question was whether

reparations were due, not the amount due.  *See Order on Initial Decision*, 122 FERC at 61,651.

Finally SFPP contends, first, that FERC erroneously denied that it had equitable discretion to fashion a remedy, and second, that FERC had discretion under section 6(3) of the ICA[3] to view the filing requirements of sections 6(1) and 6(7) as less than absolute.  The first contention is incorrect.  FERC acknowledged an award of reparations is an equitable remedy and that it was not compelled to award reparations.  *Order on Initial Decision*, 122 FERC at 61,651.  With regard to the second contention, SFPP did not make this statutory argument to FERC, and this court has held that under the ICA "a party must first raise an issue with an agency before seeking judicial review," *ExxonMobil Oil Corp. v. FERC*, 487 F.3d 945, 962 (D.C. Cir. 2007).  In reply, SFPP maintains that it is arguing only that cases interpreting provisions that are analogous to section 6(3), rather than section 6(3) itself, are applicable.  But even were this argument timely, FERC observes that section 6(3) might not apply where the rates were never filed, and that it evaluated as a part of its reparations decision many of the section 6(3) "good cause" arguments SFPP presents on brief.  For example, SFPP maintains that the Watson Contract rates did not involve rent seeking by SFPP because its shippers initiated discussions about developing drain-dry facilities in lieu of costly construction by them and then negotiated the Watson Contract rates.  FERC not only acknowledged its discretion, but carefully exercised it, explaining that reparations were appropriate because the record suggested SFPP had abused its market power by "extract[ing] an economic rent based on the difference between its own costs for

---

[3]  Section 6(3) of the ICA provides that FERC "may, in its discretion and for good cause shown . . . modify the requirements of this section with respect to . . . filing of tariffs . . . ."  49 U.S.C. app § 6(3).

resolving the operating issues at Watson Station and the costs each of the shippers would have incurred on its own hook." *Order on Initial Decision*, 122 FERC at 61,651.

Accordingly, because FERC's reasoned order of reparations falls within its discretion, SFPP fails to demonstrate that FERC was arbitrary or capricious, or abused its discretion, *see Exxon Mobil Corp. v. FERC*, 571 F.3d 1208, 1215–16 (D.C. Cir. 2009), and we deny the petition for review.